Dortch-Okara, J.
Plaintiff Edward Patapanian, Trustee of Patapanian Family Trust (“Patapanian”), brought this action against defendant MGM Contracting Co, Inc. (“MGM”) alleging breach of contract, breach of express and implied warranties and violations of G.L.c. 93A. Defendant has now moved for summary judgment on the grounds that plaintiffs claims are barred by the statute of limitations. Plaintiff opposes this motion and claims instead that summary judgment should be entered for him on the issue of liability. For the reasons outlined below, defendant’s motion is ALLOWED, and plaintiffs motion is DENIED.
BACKGROUND
On October 24, 1983, MGM entered into a contract with Patapanian to construct an office and warehouse facility in Chelsea, MA on property owned by Patapanian. The contract contained the following provision:
13.22. If, within one year after the date of substantial completion of the work or designated portion thereof or within one year after acceptance by the owner of designated equipment or within such longer period of time as may be prescribed by law or by the terms of any applicable special warranty required by the Contract Documents, any of the work is found to be defective or not in accordance with the contract documents, the Contractor shall correct it promptly after receipt of a written notice from the owner to do so unless the owner has previously given the Contractor a written acceptance of such condition. This obligation shall survive termination of the contract. The owner shall give such notice promptly after discovery of the condition.
MGM completed construction of the buildings on November 14, 1984 at which time an occupancy permit was issued, and Patapanian accepted and occupied the property.
In early 1985, Patapanian contacted MGM and reported that the east waft of the building leaked. Between 1985 and 1993 Charles Guleserian, the president of MGM, orally assured Patapanian that MGM would correct this defect in accordance with the written agreement between the parties. Furthermore, Mr. Guleserian assured Patapanian in writing as late as February 28,1989 that he was not running away from the problem and that if the defect were “a construction or workmanship defect,” he would correct the problem at his own expense.
In addition to these assurances, MGM actually attempted to correct the problem. MGM recaulked the windows and roof seams of the building in 1988 and repainted the walls in 1989. Moreover, MGM investigated the source of the leak as late as 1993 and performed tests to that end.
Despite the work that has been done, the defect in the building still exists. Plaintiffs experts estimate that it will cost approximately $60,000.00 to $70,000.00 to correct the problem.
DISCUSSION
I. Summary Judgment Standard
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a *6 matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law." Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Further, “(a) complete failure of proof concerning an essential element of the nonmoving party’s case renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Id. at 711, citing Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986).
II. The Statute of Limitations
The statutes of limitations relevant to plaintiffs claims are found in G.L.c. 260, §2 and G.L.c. 260, §5A. Since plaintiff has not alleged negligence, G.L.c. 260, §2B is not applicable to his claims.
G.L.c. 260, §2 provides that actions based “upon contracts or liabilities, expressed or implied . . . shall ... be commenced only within six years next after the cause of action accrues.” G.L.c. 260, §5A applies to plaintiffs Chapter 93A claim and states that actions “shall be commenced only within four years next after the cause of action accrues.”
Plaintiff claims that the cause of action for breach of contract did not arise earlier than 1989. He asserts this because the defendant’s efforts to correct the defect were undertaken in accordance with the terms of the contract which provided that the defendant was to correct defective workmanship. Patapanian argues further that the Chapter 93A cause of action did not accrue until the defendant breached its warranties. It is plaintiffs position that this breach did not occur until 1993 because until that time the defendant had continued to assure him that the defect would be remedied.
The case of New England Power Co. v. Riley Stoker Co., 20 Mass.App.Ct. 25 (1985), is similar to the present action. The parties in New England Power Co., 20 Mass.App.Ct. at 30, entered into a contract containing a provision that the contractor would repair any defects “resulting from imperfect or defective work done . . . which develop during the period of one year... from date . . . that the work has been completed.” When a defect arose, the defendant in that case worked for four years to remedy the problem. Id. at 26. Consequently, the plaintiff claimed, as Patapanian claims in the case at bar, that as a result of the work undertaken the cause of action did not accrue until the defendant refused to work further. Just as the argument failed in New England Power Co., it fails here.
According to New England Power Co., “promises to repair or to replace are generally viewed as specifications of remedy rather than as an independent or separate warranty.” Id. at 30. Therefore, “when there are a warranty and a promise to repair, the remedy of first resort is the promise to repair. If that promise is not fulfilled, then the cause of action is the underlying breach of wanranty.” Id.
As the court in New England Power Co. pointed out, “plaintiffs argument is in essence that by failing to remedy its first breach, the defendant committed a second breach, giving rise to a brand new cause of action and starting anew the limitations period. The fallacy of this approach is apparent. If we adopted plaintiffs position, limitations could be extended for virtually infinite time.” Id. at 31, quoting Centennial Ins. Co. v. General Elec. Co., 77 Mich.App. at 172.
Therefore, this cause of action accrued in 1985 when plaintiff noticed the leakage and notified MGM of the defect. As a result, the statutes of limitations bar all three of plaintiffs claims.
III. Estoppel
The plaintiff argues that defendant is estopped from asserting the statute of limitations as a defense because MGM induced plaintiff not to bring legal action against him. In order to prove estoppel, Patapanian must show that ”... the statements of the defendant lulled the plaintiff into the false belief that it was not necessary for him to commence action within the statutory period of limitations . . . , that the plaintiff was induced by these statements to refrain from bringing suit, as otherwise he would have done, and was thereby harmed, and that the defendant ‘knew or had reasonable cause to know that such consequences might follow.’ ” Ford v. Rogovin, 289 Mass. 549, 552 (1935). “There are no rigid criteria to apply when determining whether defendants conduct was such as to give rise to an estoppel.” New England Power Co., 20 Mass.App.Ct. at 32.
In the present case, MGM assured Patapanian until 1993 that it would not run away from the problem, and that if the defect were a construction defect it would correct the problem at its own expense. Moreover, it worked on the problem during the years 1988 and 1989. According to his affidavit, Patapanian relied on MGM’s representations that the defect would be cured in electing not to bring suit earlier.
The plaintiff analogizes his situation to that of the condominium owners in Libman v. Zuckerman, 33 Mass.App.Ct. 341 (1992). There, the court held that the defendant developer was estopped from asserting the statute of limitations where the developer had refused to do “any further punch list work” until he received assurances that legal action would not be taken against him. Id. In the case at bar, there is no *7 evidence that MGM demanded that plaintiff forebear from bringing suit. It is also significant to note that the defendant developer in Libman controlled the board of managers of the condominium owners’ association, the body which was invested with the authority to commence litigation on behalf of the condominium owners. Thus, it is apparent that the Libman court considered the unequal bargaining power between the condominium owners and the developer in finding an estoppel. Here, plaintiff and defendant stand on equal footing.
As the court in New England Power Co. held, the actions of the defendant, along with its assurances, do not establish that plaintiff was wrongfully lulled into delay. Patapanian has not asserted that the defendant’s repair efforts were insincere, “only that they were unsuccessful.” Id. at 34. “[T]he fact of honest, genuine repair efforts, standing alone,” is not “a sufficient basis for the application of the doctrine of estoppel.” Id.
ORDER
For the reasons stated above, plaintiffs Motion for Summary Judgment is DENIED. Defendant’s Motion for Summary Judgment is ALLOWED.