JEFFREY FLESNER vs. TECHNICAL COMMUNICATIONS
CORPORATION & others.[1]

Middlesex. April 1, 1991. - August 8, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Contract*, Employment. *Employment*, Termination. *Public Policy. Emotional Distress. Fraud. Privacy. Civil Rights*, Termination of employment. *Practice, Civil*, Summary judgment. *Damages*, Emotional distress.

A cause of action for wrongful discharge in violation of public policy was stated by a plaintiff's allegation that his discharge from employment was motivated by his employer's desire to interfere with or retaliate for the plaintiff's cooperation with a United States Customs Service investigation [810-811], and where the motive for the discharge was a contested issue, summary judgment was incorrectly entered for the employer [811-812].

In a civil action in which the plaintiff sufficiently alleged and supported a claim of misrepresentation the judge incorrectly dismissed the claim. [814]

In a civil action based on an allegation of wrongful discharge from employment, the employer's contention that the plaintiff was precluded from recovering damages because of alleged misrepresentations on his résumé and in his job interview involved disputed issues of material fact not appropriately resolved at the summary judgment stage of the proceedings. [815-817]

In a civil action in which the plaintiff claimed damages for invasion of privacy pursuant to G. L. c. 214, § 1B, the judge correctly ordered entry of summary judgment for the defendants where the only evidence on the claim was the plaintiff's hearsay testimony or statements of his personal belief. [817-818]

In a civil action based on the plaintiff's alleged wrongful discharge by his employer, the plaintiff failed to identify any "secured right" under the Constitution or laws of the Commonwealth or the United States to entitle him to relief on a claim under the Massachusetts Civil Rights Act, G. L. c. 12, § 11I, and summary judgment properly entered for the employer on that claim. [818-819]

[1] Arnold McCalmont and James McCalmont.

CIVIL ACTION commenced in the Superior Court Department on January 25, 1985.

The case was heard by *Robert J. Hallisey*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard L. Neumeier* (*Paul M. Moretti* with him) for the plaintiff.

*D. Alice Olsen* (*Thomas M. Elcock* with her) for the defendants.

ABRAMS, J. Jeffrey Flesner claims that his former employer, Technical Communications Corporation (TCC), constructively discharged him in retaliation for his cooperation in a United States Customs Service investigation of TCC. A Superior Court judge awarded summary judgment in favor of TCC. Flesner now appeals, contending that the judge erred in dismissing his claims for (1) wrongful discharge; (2) misrepresentation; (3) invasion of privacy; and (4) violation of the Massachusetts Civil Rights Act, G. L. c. 12, § 11I (1990 ed.). In addition, the defendants claim that Flesner is precluded from recovering damages by his own misrepresentations. We transferred the case to this court on our own motion. We reverse the summary judgment on the wrongful discharge and misrepresentation claims. We affirm on the other claims.

From the materials submitted to the court in conjunction with the summary judgment motion, the undisputed facts are as follows. TCC is a Massachusetts corporation that produces, develops, and sells internationally communications systems, including communications security systems. Arnold McCalmont and his son, James McCalmont, also defendants, are president and sales manager, respectively. Flesner worked as a salesman for TCC from January 31, 1983, until his resignation on September 1, 1983.

Flesner planned a sales trip to Argentina in July, 1983, to demonstrate certain TCC security equipment to potential buyers. He claims that before he left he repeatedly asked James McCalmont whether a temporary export license was needed to transport the equipment to Argentina. McCalmont

told Flesner that because he was only demonstrating the equipment rather than making a permanent sale, no such license was required. At the time, TCC had applied for a temporary export license for Argentina but the application was returned with no action taken.

On the date of departure, Flesner was met at Logan International Airport in Boston by a TCC employee who delivered the equipment to Flesner and handed him a manila envelope containing Customs documents. Flesner checked the equipment through to Argentina. At a stopover in Miami, Flesner was detained by Customs officials. He handed them the documents that TCC had provided him in the manila envelope, but they did not satisfy the officials. The officials told Flesner that if he did not cooperate, he would be handcuffed and arrested on the spot. Flesner said he would cooperate. The officials further questioned Flesner for approximately two and one half hours about TCC's business, and Flesner's planned Argentina trip. Afterward, he was told to return to Boston the next day, but the equipment was seized.

When Flesner arrived back at Logan, he was met by other Customs officials who also told him that he would not be arrested or handcuffed if he cooperated. Again, he was questioned intensively. The officials instructed Flesner not to tell TCC that he was cooperating with them unless asked directly. They then released him. Later that night, Flesner met with the McCalmonts and Herman Wolz, another TCC employee, to relate the events of the past two days. He did not tell them, because they did not ask, that he was cooperating with Customs.

The Customs agents met with Flesner several times after the incident to ask further questions. They also interviewed Arnold McCalmont. At one point, Flesner was summoned to a meeting with Arnold McCalmont and TCC's lawyer at which Flesner informed them that he was cooperating with Customs. The lawyer advised Flesner that they might become adversaries and that Flesner should watch what he said to them.

Flesner claims that the employer-employee relationship deteriorated thereafter. He asserts that he was forbidden to travel until the investigation was cleared up, and that he was not allowed to telephone or telex potential customers. All of his correspondence was to be reviewed by Wolz, and little, if any, of it was approved for mailing. Because he was denied access to his customers, he asserts that he was prevented from making sales or earning commissions, although he had not made any sales prior to the incident either.

On August 31, 1983, Flesner told Arnold McCalmont and Wolz that he had met with Customs agents the previous week. Wolz told Flesner to inform them of any further contacts with Customs. Later, Flesner asked Wolz about his future with TCC. Wolz's response was not positive. He told Flesner that he should resign so that he could receive two weeks' severance pay or he would be fired the next day. On September 1, 1983, Flesner tendered his resignation.

In January, 1985, Flesner filed an eight-count complaint against the defendants. TCC counterclaimed for misrepresentation. In September, 1989, the defendants moved for summary judgment on Flesner's claims.[2] On September 27, 1989, the judge allowed the motion except as to the counts for misrepresentation, wrongful discharge, and negligence. In October, he allowed the motion for all counts, and filed a memorandum of decision explaining his order. Flesner appeals the order as to five of those counts.

1. *Motion for summary judgment.* In ruling on a motion for summary judgment, "a judge . . . must consider 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' in determining whether summary judgment is appropriate. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). The burden on the moving party is to 'show that there is no genuine issue as to any material fact and that the moving party is entitled to judg-

---

[2]TCC did not move for summary judgment on its counterclaim. The judge allowed Flesner's motion for a separate judgment. See Mass. R. Civ. P. 54 (b).

ment as a matter of law.' *Id.*" *Madsen* v. *Erwin*, 395 Mass. 715, 719 (1985). This burden need not be met by affirmative evidence negating an essential element of the plaintiff's case, but may be satisfied by demonstrating that proof of that element is unlikely to be forthcoming at trial. See *Kourouvacilis* v. *General Motors Corp., ante* 706 (1991).

Where a moving party properly asserts that there is no genuine issue of material fact, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A judge's mere belief that the movant is more likely to prevail at trial is not a sufficient basis for granting summary judgment. See *Byrd* v. *Roadway Express, Inc.*, 687 F.2d 85, 87 (5th Cir. 1982); *American Int'l Group* v. *London Am. Int'l Corp. Ltd.*, 664 F.2d 348, 351 (2d Cir. 1981). 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2725, at 104-105 (1983).

In cases where motive, intent, or other state of mind questions are at issue, summary judgment is often inappropriate. See *Pederson* v. *Time, Inc.*, 404 Mass. 14, 17 (1989) ("the generally accepted rule is that the 'granting of summary judgment in a case where a party's state of mind . . . constitutes an essential element of the cause of action is disfavored' "), quoting *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81, 86 (1984). See also *Sweat* v. *Miller Brewing Co.*, 708 F.2d 655, 657 (11th Cir. 1983); *Baldini* v. *Local 1095, UAW*, 581 F.2d 145, 151 (7th Cir. 1978). 10A C. Wright, A. Miller, & M. Kane, *supra* at § 2730. In such cases, "[m]uch depends on the credibility of the witnesses testifying as to their own states of mind. In these circumstances, the jury should be given an opportunity to observe the demeanor, during direct and cross-examination, of the witnesses whose states of mind are at issue." *Croley* v. *Matson Navigation Co.*, 434 F.2d 73, 77 (5th Cir. 1971).

With these principles in mind, we consider the merits of Flesner's arguments.

2. *Wrongful discharge.* Flesner claims that TCC constructively discharged him in violation of public policy because of his cooperation with the Customs officials. We have recognized an exception to the traditional doctrine that at-will employees may be discharged for any reason or no reason at all, where the discharge is for reasons that violate public policy. See *DeRose* v. *Putnam Management Co., Inc.,* 398 Mass. 205 (1986). We have held, for example, that a cause of action will lie when an employee is fired for disobeying the employer's instruction to testify falsely at a trial, see *id.,* or for enforcing safety regulations for which she was responsible, see *Hobson* v. *McLean Hosp. Corp.,* 402 Mass. 413 (1988).

In *Smith-Pfeffer* v. *Superintendent of the Walter E. Fernald State School,* 404 Mass. 145, 149-150 (1989), we stated that redress is available for employees who are terminated "for asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury)." Flesner claims he was discharged for cooperating with the Customs officials. The law did not *require* him to cooperate; he had the right to remain silent. Nevertheless, it is the public policy of this Commonwealth to encourage cooperation with ongoing criminal investigations. See, e.g., G. L. c. 262, § 29 (1990 ed.) (providing compensation and travel costs reimbursement for any person who attends the Attorney General or the offices of a district attorney for the purpose of assisting an investigation); G. L. c. 233, § 20D (1990 ed.) (permitting a grant of immunity for specified crimes for witnesses in a grand jury investigation); *Correllas* v. *Viveiros, ante* 314 (1991). Cf. 18 U.S.C. § 6002 (permitting a grant of immunity to witnesses testifying or providing information in a proceeding ancillary to an agency of the United States).

We think that the reasons for imposing liability in the categories of cases set forth in *Smith-Pfeffer* also justify legal redress in certain circumstances for employees terminated for performing important public deeds, even though the law does

not absolutely require the performance of such a deed.[3] In such a situation, as in the *Smith-Pfeffer* categories, allowing the employer to terminate employees for reasons that directly contradict the public policy of the Commonwealth would seriously impair that policy. See *Petermann* v. *International Bhd. of Teamsters*, 174 Cal. App. 2d 184 (1959).

Cooperating with an ongoing governmental investigation is an important public deed which fits this category. See *Palmateer* v. *International Harvester Co.*, 85 Ill.2d 124 (1981) (cause of action stated where plaintiff claims he was discharged in retaliation for supplying information to law enforcement agency that a fellow employee might have committed a crime and for agreeing to assist in the investigation and trial). The judge, however, granted summary judgment because "TCC never urged Flesner not to cooperate with Customs officials or otherwise hamper an investigation." This assertion does not demonstrate an absence of evidence on an essential element of the claim. See *Kourouvacilis, supra.* Flesner's claim is that the discharge itself was motivated by a desire to interfere with or retaliate for his cooperation with the investigation. Such intentional interference, if found by a jury, would constitute a wrongful discharge in violation of public policy.

Moreover, the judge asserted that, while "Flesner may be said to have been fired for participating in an illegal scheme in which the employer was involved, . . . such a termination does not fall within the public policy exception." Although a reasonable jury may conclude that such was the cause for Flesner's termination, it would not be required to so conclude. Where a jury can draw opposite inferences from the

---

[3]"Whistleblowing," for example, may fall into this category. See *Mello* v. *Stop & Shop Cos.*, 402 Mass. 555, 560 n.6 (1988). See also *Garibaldi* v. *Lucky Food Stores, Inc.*, 726 F.2d 1367 (9th Cir. 1984); *Petrik* v. *Monarch Printing Corp.*, 111 Ill. App. 3d 502 (1982); *Palmer* v. *Brown*, 752 P.2d 685 (Kan. 1988); *Brown* v. *Physicians Mut. Ins. Co.*, 679 S.W.2d 836 (Ky. App. 1984); *McQuary* v. *Bel Air Convalescent Home, Inc.*, 69 Or. App. 107 (1984); *Harless* v. *First Nat'l Bank in Fairmont*, 162 W.Va. 116 (1978).

evidence, summary judgment is improper. See *Anderson* v.
*Liberty Lobby, Inc., supra* at 248-250. Flesner's deposition
asserts that he asked about export licenses and TCC told him
they were not necessary. Thus, it is permissible to conclude
that Flesner left on his trip completely unaware that he was
acting in violation of the law.[4] He describes his ongoing co-
operation with Customs authorities and a corresponding de-
terioration in his working relationship with TCC. He asserts
that he was told to resign with two weeks' pay or be fired.
This evidence sufficiently raises a question of material fact as
to whether Flesner was discharged in retaliation for his coop-
eration with a law enforcement investigation.[5] The defend-
ants contend that Flesner was discharged, if at all, for other
legitimate business reasons. Thus, the motive for the dis-
charge is a primary contested issue of fact. In such circum-
stances, the grant of summary judgment on these claims was
improper. See *Sweat* v. *Miller Brewing Co., supra* (where
employer's intent in discharging plaintiff was contested, sum-
mary judgment was improper); *Padway* v. *Palches*, 665 F.2d
965, 967 (9th Cir. 1982) (same).[6]

---

[4]The defendants contend that Flesner's predicament was precipitated by
his own wrongdoing in not presenting the documents in the manila envel-
ope to Customs in Boston. It is clear from the record, that the envelope did
not contain the required documents to transport the equipment to Argen-
tina. Any assertion that earlier presentation of the insufficient documents
would have prevented the Customs investigation is pure speculation and
cannot support a motion for summary judgment. See *Jackson* v. *Hogan*,
388 Mass. 376, 378 (1983).

[5]The defendants argue that Flesner's cooperation with Customs was mo-
tivated by a desire to avoid prosecution and that there is no public policy
protecting this kind of self-interested behavior. This argument miscon-
strues the public policy at issue. The policy protects the act of cooperation.
We decline to scrutinize the subjective motives behind such cooperation
and protect only those actors deemed to have an altruistic motive for
cooperating.

[6]The record before the judge does not support any claim for wrongful
discharge other than violation of public policy. Therefore, we do not dis-
cuss the issue of liability pursuant to *Gram* v. *Liberty Mut. Ins. Co.*, 384
Mass. 659 (1981), and *Fortune* v. *National Cash Register Co.*, 373 Mass.
96 (1977).

3. *Damages.* In addition to economic damages, Flesner claims damages for emotional distress and mental anguish as well as punitive damages.[7] Punitive damages are not allowed in this Commonwealth unless expressly authorized by statute. See *Santana* v. *Registrars of Voters of Worcester*, 398 Mass. 862, 867 (1986); *USM Corp.* v. *Marson Fastener Corp.*, 392 Mass. 334, 353 (1984). Because no such legislative authorization applies to this case, Flesner's claim for punitive damages cannot stand.

Because the judge ordered summary judgment for the defendants on liability for the wrongful discharge count, he did not decide whether such a cause of action gives rise to tort damages, such as those for emotional distress claimed by Flesner, in addition to contract damages. There is, therefore, no ruling before us to review.

The parties focused on liability in the motion for summary judgment. Therefore, the factual background on damages is undeveloped. Indeed, no facts alleged in the complaint or submitted on summary judgment evidence any suffering by Flesner of mental anguish due to the defendant's conduct in wrongfully discharging him. We decline to adopt a hard and fast rule on whether tort damages in general and emotional distress damages in particular are recoverable in wrongful discharge cases in the absence of a well-developed factual record. See *Hobson* v. *McLean Hosp. Corp.*, 402 Mass. 413, 417 n.3 (1988). If at trial no facts are brought out supporting damages for emotional distress due to the defendant's intentional conduct, then the question need not be reached. We therefore decline to address this issue.[8]

---

[7] The damages Flesner claims also include loss of back pay, and health and life insurance benefits. The defendant denies that any damages are due but asserts that, if any damages are due, they are contract damages.

[8] A majority of other jurisdictions that have considered the question have ruled that wrongful discharge may give rise to tort damages. See cases cited in *DeRose, supra* at 212 n.7; cases cited in Damages Recoverable for Wrongful Discharge of At-Will Employee, 44 A.L.R. 4th § 13, at 1131 (1986); *Hansen* v. *Harrah's*, 100 Nev. 60 (1984); *Sides* v. *Duke Univ.*, 74 N.C. App. 331 (1985); *Ludwick* v. *This Minute of Carolina, Inc.*, 287 S.C. 219 (1985); *Bowman* v. *State Bank of Keysville*, 229 Va. 534 (1985);

4. *Misrepresentation.* The judge also granted summary judgment on Flesner's misrepresentation claim because the complaint did not allege damages independent of those alleged in connection with the termination of his employment. "Therefore," according to the judge, the "plaintiff's cause of action, if one lies, must be for Wrongful Discharge."

Even if the judge were correct that the only damages Flesner alleges are those arising out of his termination, a point we do not decide, the overlap does not justify dismissal of the claim. Flesner, of course, cannot recover double damages for the two claims, but he is entitled to proceed on more than one theory of recovery. See *Whitinsville Plaza, Inc.* v. *Kotseas,* 378 Mass. 85, 89 (1979); *Laurendeau* v. *Kewaunee Scientific Equip. Corp.,* 17 Mass. App. Ct. 113, 120-121 (1983). Mass. R. Civ. P. 8 (e) (2), 365 Mass. 749 (1974). The judge does not conclude that Flesner insufficiently alleged or supported his claim of misrepresentation. Summary judgment should not have been allowed on the misrepresentation claim. Cf. *Presto* v. *Sequoia Sys., Inc.,* 633 F. Supp. 1117 (D. Mass 1986) (claims for breach of employment contract and misrepresentation allowed to go forward; wrongful discharge claim dismissed on other grounds).[9]

---

*Thompson* v. *St. Regis Paper .Co.,* 102 Wash. 2d 219 (1985). Where such a tort action is recognized, courts have routinely awarded damages for emotional distress that has been properly proved. See, e.g., *Smith* v. *Atlas Off-Shore Boat Serv., Inc.,* 653 F.2d 1057, 1064 (5th Cir. 1981); *Wiskotoni* v. *Michigan Nat'l Bank-West,* 716 F.2d 378 (6th Cir. 1983); *Cancellier* v. *Federated Dep't Stores,* 672 F.2d 1312, 1318 (9th Cir.), cert. denied, 459 U.S. 859 (1980); *Niblo* v. *Parr Mfg. Prods.,* 108 N.M. 643 (1989); *Cagle* v. *Burns and Roe,* 106 Wash. 2d 911 (1986); *Harless* v. *First Nat'l Bank in Fairmont,* 169 W. Va. 673 (1982). But see *Brockmeyer* v. *Dun & Bradstreet,* 113 Wis. 2d 561 (1983).

[9]The defendants assert on appeal that Flesner's claims for damages for mental anguish in connection with the wrongful discharge count and the misrepresentation count are barred by the exclusivity provision of the Workers' Compensation Act, G. L. c. 152, § 24 (1990 ed.). In *Foley* v. *Polaroid Corp.,* 400 Mass. 82, 92-93 (1987), we rejected the argument that damages for emotional distress are barred by the Workers' Compensation Act when the underlying claim is not so barred. The defendants do not argue that either of the underlying claims is barred.

5. *Flesner's alleged misrepresentation.* The defendants argue that Flesner is precluded from recovering damages because he misrepresented several facts on his résumé and in his job interview leading to his employment with TCC. According to the defendants, TCC would not have hired Flesner had they known these representations were not true. Therefore, they conclude that even though they did not discover these misrepresentations until after Flesner resigned, he cannot recover any damages because TCC would have been justified in firing him even absent any wrongful motives. Because the judge ordered summary judgment for the defendants on all counts, he did not reach this issue.

The defendants cite a line of Federal wrongful discharge and employment discrimination cases in support of their argument. See, e.g., *East Texas Motor Freight Sys., Inc.* v. *Rodriguez*, 431 U.S. 395 (1977); *Mt. Healthy City School Dist. Bd. of Educ.* v. *Doyle*, 429 U.S. 274 (1977); *Summers* v. *State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700 (10th Cir. 1988); *Smallwood* v. *United Airlines, Inc.*, 728 F.2d 614 (4th Cir.), cert. denied, 469 U.S. 832 (1984); *Murnane* v. *American Airlines*, 667 F.2d 98 (D.C. Cir.), cert. denied, 456 U.S. 915 (1982). These cases all deal with the question of the appropriate *remedy* once discrimination or a wrongful discharge has been established. In *Mt. Healthy*, a teacher was fired, in part because of his exercise of rights secured him by the First Amendment to the United States Constitution. Several other permissible reasons *could* have supported the discharge, however. The Supreme Court remanded the case to the District Court to determine whether the school board in fact *would* have fired the plaintiff even absent the impermissible reason. The court reasoned that the plaintiff should not be put in a better position than he would have been in had the wrong not been committed. See *Mt. Healthy*, *supra* at 285-287. Later cases extended this principle to allow employers to show that other legitimate reasons would have justified their conduct even though those reasons were not discovered until after the fact. See *Summers*, *supra*; *Smallwood*, *supra*.

Even if the defendants are correct that they may show that their "after the fact" discovery of legitimate reasons for discharging Flesner precludes recovery, resolution of this issue is not appropriate at the summary judgment stage. The parties dispute whether Flesner actually made some of the misrepresentations.[10] As for other misrepresentations, although Flesner concedes he made them, he disputes their effect.[11] Flesner argues that TCC did not rely on these statements in hiring him. At the very least, it is certainly disputed whether TCC would have *discharged* Flesner (as opposed to not hiring him) had they discovered the misrepresentations during the course of employment. The cases cited by the defendants in which a court found that the employee was unqualified and would not have been hired absent the discrimination involved wrongful conduct in the hiring stage, not the discharge stage. See *East Texas Motor Freight, supra*; *Smallwood, supra*; *Murnane, supra*. Moreover, the only case they cite deciding on summary judgment that a plaintiff was not entitled to recover even if he proved a discriminatory discharge involved uncontested employee malfeasance far more egregious than is alleged here. See *Summers, supra* (discharged employee falsified insurance records in over 150 instances, including instances after having been placed on probation for such conduct).[12] Because the defendants'

---

[10]For example, the defendants claim that Flesner misrepresented that he would be able to effect a sale of TCC equipment to Peru for approximately 50 million dollars knowing that his former employer probably would make the sale. Flesner, on the other hand, claims he told TCC only that if the financing fell through on the deal with his former employer TCC might have an opportunity to effect the sale. This disputed issue of fact should be resolved at trial.

[11]For example, Flesner concedes that in his interview with James McCalmont he misrepresented his current salary as $36,000 per year when it was only $24,000, and that he stated in his résumé that he had eight years of experience in sales and marketing when in fact he only had three.

[12]The plaintiffs also cite *Guzman* v. *United Airlines*, 53 FEP Cases 1419 (D. Mass. 1990), an unpublished United States District Court opinion which granted summary judgment in an employer's favor. The court held that the plaintiff failed to establish a prima facie case of discriminatory discharge pursuant to G. L. c. 151B, § 4 (1990 ed.). See *Wheelock College*

contention that Flesner is precluded from recovering damages even if he proves wrongful discharge depends on disputed issues of material fact involving the defendants' motive or intent, summary judgment is not proper.

6. *Invasion of privacy.* Flesner alleges that TCC "monitored" his personal telephone calls and made anonymous telephone calls to his friends and family inquiring about him. He asserts a claim for damages for invasion of privacy pursuant to G. L. c. 214, § 1B (1990 ed.). The judge ruled that the evidence was insufficient to support these allegations and ordered summary judgment for the defendants. We agree with the judge's holding.

Because Flesner would bear the burden of proving his claim of invasion of privacy at trial, the defendants, as the parties moving for summary judgment, had the burden of demonstrating at least that there was an absence of evidence in the record supporting Flesner's claim. See *Kourouvacilis, supra* at 715-716. If the evidence is insufficient to support his claim, "a trial would be useless and [the defendants are] entitled to summary judgment as a matter of law." *Id.* at 715, quoting *Celotex Corp.* v. *Catrett,* 477 U.S. 317, 331-332 (1986) (Brennan, J., dissenting).

We agree with the defendant that, accepting Flesner's statement of evidence on the claim of invasion of privacy as accurate, the evidence was insufficient as a matter of law. The only evidence cited by Flesner that TCC telephoned his family and friends was his own deposition testimony that his family and friends told him that they had received such calls. The judge correctly ruled that the testimony was hearsay and insufficient to survive a motion for summary judgment. See Mass. R. Civ. P. 56 (e); *Madsen* v. *Erwin, supra* at 719;

v. *Massachusetts Comm'n Against Discrimination,* 371 Mass. 130, 135 n.5 (1976). The court also noted, without citation, that the plaintiff had falsified his employment application and that the employer had offered uncontradicted evidence that the plaintiff would not have been hired had the application truthfully stated the facts. Here, by contrast, the issues of the misrepresentations and their effect on TCC's decision whether to retain Flesner are strongly contested.

*Jackson* v. *Hogan*, 388 Mass. 376, 378 (1983). The sole evidence that Flesner offers to support his claim that TCC monitored his calls was his testimony regarding Herman Wolz's admitted conduct. Flesner stated that Wolz admitted that he called Flesner's insurance company to verify that reimbursement claimed by Flesner for a call to the company was justified. Flesner asserts that the fact that Wolz verified this one call "leads me to believe that they were monitoring my [tele]phone calls. Personal as well as professional." This unsupported statement of belief also is insufficient to survive a summary judgment motion. See *Shapiro Equip. Corp.* v. *Morris & Son Constr. Corp.*, 369 Mass. 968 (1976); *Sereni* v. *Star Sportswear Mfg. Corp.*, 24 Mass. App. Ct. 428, 433 (1987). The judge was correct in his disposition of this claim.

7. *The Massachusetts Civil Rights Act claim.* Finally, Flesner claims that he is entitled to relief under the Massachusetts Civil Rights Act, G. L. c. 12, § 11I (1990 ed.) (MCRA). The MCRA provides a remedy to a person whose secured rights under the Constitution or laws of the United States or the Commonwealth have been interfered with by threats, intimidation, or coercion. See G. L. c. 12, § 11I. Flesner has not clearly identified any "secured right" with which TCC interfered. In his complaint he mentions rights under the Fourteenth Amendment of the United States Constitution and unspecified rights under the Massachusetts Declaration of Rights which he characterizes as the "freedom to use [one's] faculties in all lawful ways to live and work where he will; to earn his livelihood in any lawful calling; to pursue any livelihood or avocation; and for that purpose to enter into all contracts, which may be proper, necessary, and essential to his carrying out to a successful conclusion the purposes mentioned above." The essence of his argument on appeal appears to be based on a right to contract for personal employment. The cases in which he purports to find such a constitutional right date from 1929 and earlier. Whatever may be the validity of those cases today, see, e.g., *Wyeth* v. *Cambridge Bd. of Health*, 200 Mass. 474 (1909) (relying on *Lochner* v. *New York*, 198 U.S. 45

[1905]), they do not support the contention that Flesner has a secured constitutional right to retain his at-will employment contract. He has failed to identify a secured right within the meaning of the MCRA. Summary judgment was properly granted.[13] See *Hobson* v. *McLean Hosp. Corp.*, 402 Mass. 413, 417-418 & n.6 (1988).

8. *Conclusion.* The judgment is affirmed with respect to Flesner's claims of invasion of privacy and violation of the Massachusetts Civil Rights Act. It is reversed with respect to the wrongful discharge and misrepresentation claims.

*So ordered.*

---

[13]Because the judge correctly dismissed the MCRA claim, Flesner is not entitled to attorney's fees.