Toomey, J.
INTRODUCTION
The complaint of Thomas F. Holden (“Holden”) and his wife, Jean R. Holden (“Jean”), alleges (1) wrongful termination of Holden in violation of public policy; (2) “interference with advantageous contractual relations”; and (3) loss to Jean of spousal consortium. The matter is now before the court on the motion for summary judgment filed by defendants, Worcester Housing Authority (‘WHA”) and Brian McQuade (“McQuade”). For the reasons discussed below, defendants’ motion is DENIED.
BACKGROUND
OnApril22,1991, Holden began working for the WHA as a program representative inspector. On August 10, 1992, he was promoted to Director of Tenant Selection in Public Housing. Holden alleges that, shortly thereafter, he communicated with Paul Baily of the Executive Office of Communities and Development (“EOCD”) concerning what Holden believed to be the WHA’s improper transfer of tenants. Holden further alleges that on October 23, 1992, his supervisor, McQuade, cautioned him not to speak further with anyone at the EOCD. The WHA discharged Holden by memorandum dated November 10, 1992. McQuade informed Holden that the decision to discharge him was based on his poor performance evaluation, an evaluation Holden maintains he did not receive until after his discharge.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue “and [further,] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14,16-17 (1989). Summary judgment is not made out by defendants on any of the counts at bar.
Count I. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
Count I of the Complaint alleges that WHA and McQuade discharged Holden in violation of public policy. Specifically, Holden asserts that he was wrongfully terminated for speaking with agents of the EOCD concerning improprieties and possible illegal activities of the WHA. That is, Holden claims to have been fired for “whistleblowing.”
Massachusetts courts have recognized various exceptions to the traditional at-will employment doctrine that permits termination for any reason or for no reason at all. Wright v. Shriners Hosp., 412 Mass. 469, *62 472-73 (1992). For example, liability may befall an employer who terminates an at-will employee in violation of a “clearly established public policy.” Hobson v. McLean Hosp. Corp., 402 Mass. 413, 416 (1988), and cases cited. The Supreme Judicial Court has further observed that, “(r]edress is available for employees who are terminated for asserting a legally guaranteed right (e.g., filing workers’ compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do what the law forbids (e.g., committing perjury).” Smith-Pfefferv. Superintendent of the Walter E. Fernald State School, 404 Mass. 145, 149-50 (1989).
Additionally, it may be a violation of public policy to terminate an employee who is doing what the law encourages, even if the activity is not specifically required by law. In Flesner v. Technical Communications Corp., 410 Mass. 805, 810 (1991), the Court found that a violation of public policy would result where termination was intended to impede an employee from cooperating with an ongoing governmental investigation or was in retaliation for such cooperation. Id. The Flesner Court further indicated that “whistleblowing” might fall into the category of important public deeds worth fostering. Id. at 810, 811, n.3.
The Massachusetts Legislature responded to Flesner's allusion when it recently enacted a statute securing protection of whistleblowers from wrongful termination by government employers. G.L.c. 149, §185, added by St. 1993, c. 471. The statute provides, in part:
An employer shall not take any retaliatory action against an employee because the employee . . . (d)iscloses ... to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law . . .
G.L.c. 149, §185(b)(l). Although the statute has no retrospective effect, its enactment does demonstrate that the protection of whistleblowers is a recognized public policy.
In light of development of the public policy exception, this court finds that the facts alleged in the complaint make out a claim for wrongful termination. If those facts are established at trial, plaintiffs will prevail. There exist, therefore, genuine issues of material fact to be resolved by the trier of fact.
Defendants further argue that, because wrongful discharge in violation of public policy is a “common law tort,” the Holdens’ claim falls squarely within the parameters of the Massachusetts Tort Claims Act, G.L.c. 258, §§1-13, which, as a matter of law, would provide defendants a defense. This court disagrees with defendants’ premise.
The Supreme Judicial Court has consistently refrained from deciding whether the public policy doctrine sounds in contract or tort. See John F. Adkins and Scott C. Moriearly, Termination in Violation of Public Policy, Part 2, Mass. Lawyer’s Weekly, Feb. 6, 1995, at 41, and cases cited. This court will be guided, therefore, by analogy to the other generally recognized exceptions to the at-will employment doctrine, viz (1) terminations in violation of the implied covenant of good faith and fair dealing, and (2) terminations in violation of an implied contract. See Jeffrey L. Hirsch, Labor and Employment in Massachusetts: A Guide to Employment Laws Regulations and Practices 248 (1995). Both of those exceptions sound in contract, rather than tort. This court is persuaded that identifying the public policy exception as a contract theory is the more consistent approach in the analysis of wrongful termination cases. Accordingly, the Holdens’ wrongful termination claim is not to be tested by the Massachusetts Tort Claims Act. Summary judgment upon Count I is inappropriate.
Count II. INTERFERENCE WITH ADVANTAGEOUS CONTRACTUAL RELATIONS
In Count II of their Complaint, the Holdens allege that McQuade intentionally interfered with Holden’s advantageous contractual relationship with WHA.[1] Section 10(c) of the Massachusetts Tort Claims Act exempts a public employer from liability for “any claim arising out of an intentional tort, including . . . interference with advantageous relations or interference with contractual relations.” The Act does not, however, relieve offending employees, such as defendant McQ-uade, from liability for their intentional torts. “While public employers, like the Authority, may not be held liable for intentional torts committed by their employees, the employees may be personally liable for any harm they have caused.” Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 286 n.9 (1985). Accordingly, summary judgment ought not to be granted as to Count II.
Count III. LOSS OF CONSORTIUM (COUNT III)
Count III is a loss of consortium claim by Jean Holden against both the WHA and McQuade. Although the Massachusetts Tort Claims Act provides for exclusive remedies against a public employer, c. 258, §2,[2] the statute does not bar loss of consortium claims brought by an injured employee’s spouse. Eyssi v. Lawrence, 416 Mass. 194, 203-04 (1993). “The Legislature’s intent to confine the applicability of §2 to the individual claim of a negligence victim leaves a spouse (or child) free to assert his or her loss of consortium cause of action even if the injured employee has already asserted a claim for damages.” Id. at 203. Accordingly, summary judgment upon Count III does not lie.
ORDER
For the foregoing reasons, defendants’ motion for summary judgment is hereby DENIED.

 Intentional interference with contractual relations and intentional interference with advantageous relation are separate torts requiring different elements. See Nolan and *63 Sartorio, Tort Law, §§97,98 (1989). For the reasons discussed below, it is unnecessary for this court to determine if the somewhat discordant articulation of Count II was intended to allege one or both of those torts.

Section 2 provides, in relevant part: “Final judgment in an action brought against a public employer under this chapter shall constitute a complete bar to any action by a party to such judgment against such public employer or public employee by reason of the same subject matter.”