Donohue, J.
INTRODUCTION
In Count I of a multi-count complaint filed by the Plaintiff, John L. Bala, against the Defendants, Bala seeks to recover damages for his wrongful termination by the Defendants. On August 1,1997, the Defendants moved for summary judgment on this Count of the complaint, which Bala opposed. A hearing was held on April 24, 1998, at which time both parties presented arguments on the motion. For the following reasons, the Defendants’ Motion for Summary Judgment on Plaintiffs Defamation Count is denied.
BACKGROUND
A. Undisputed Facts
The following facts, as derived from the summary judgment record, are undisputed. The Plaintiff, John L. Bala (Bala), was employed by the Defendants, American Optical Corporation and AOtec, Inc., a wholly *614 owned subsidiary of American Optical Corporation. The Defendant, Maurice Cunniffe (Cunniffe) is the sole stockholder and owner of American Optical Corporation. Bala was the president of AOtec, Inc. from the date of its incorporation in or about 1990 until the date of his termination on May 13, 1994. Bala was an employee-at-will. Part of Bala’s job with AOtec, Inc. was to secure contracts for the manufacture of products developed by AOtec. In 1990, Bala, on behalf of AOtec, Inc., entered into a contract with the United States Marine Corps, Defense Logistics Agency (Marine Corps) for the development and manufacture of protective eyewear for the Marine Corps (Marine Corps contract). Under the Marine Corps contract, the Marine Corps agreed to pay a stated price for the eyewear. At some point, the Marine Corps contract was amended, changing the price of the eyewear. At the time of the amendment, the Marine Corps had already made at least one payment to AOtec, Inc. under the original price. By the time that the Marine Corps contract was fully executed, discharging the Marine Corps and AOtec, Inc. from any further performance, the Marine Corps had overpaid AOtec, Inc. by $399,839.43.
In 1992, Bala became aware of the overpayment. Bala addressed the issue with Ralph Heath, a former controller of AOtec, Inc., and Pauline Dacoles, the accounting manager for American Optical Corporation. At the meeting with Heath, Bala instructed Heath to address the issue properly, as any inappropriate action may result in violation of FAR rules and regulations.
On or about June 14, 1995, Louis R. Kronfeld, then president of AOtec, Inc., sent a letter to the Marine Corps regarding the possible overpayment and requesting confirmation that the amount was overpaid. In this letter, Kronfeld enclosed copies of two prior letters that allegedly were previously sent to the Marine Corps regarding the same. On September 22, 1995, the Marine Corps demanded refund of the overpaid amount. The full amount overpaid was refunded to the Marine Corps on October 18, 1995.
During his tenure with AOtec, Inc., and while the overpayment on the Marine Corps contract was outstanding, Bala did not personally contact the Marine Corps, nor did he or Heath make any written memoranda or notes, or communicate in writing to any other person, regarding the substance of the oral communications with Cunniffe and other staff of the corporate Defendants.
B. Disputed Facts
The following facts, taken from the summary judgment record, are disputed. The Defendants contend that after Bala spoke with Heath and Dacoles regarding the overpayment, AOtec, Inc. marked the overpayment as a liability and the amount was carried on the financial books as a liability. The Defendants argue that this “reserve” demonstrates that AOtec, Inc. was not attempting to hide the fact of overpayment, and that AOtec, Inc. would refund the overpayment upon request by the Marine Corps. However, Bala points out that the submitted financial statements for 1992, 1993 and 1994 do not demonstrate a “reserve” in AOtec, Inc.’s records for the overpayment.
In addition, the Defendants allege that they took steps to have the Marine Corps audit the contract to determine whether an overpayment was made. In an effort to prompt the audit, the Defendants provide copies of letters dated May 1, 1992, September 19, 1994 and June 14, 1995, from various members of the AOtec, Inc. staff to the Marine Corps. These letters notify the Marine Corps of the overpayment, and request that an audit be performed to reconcile the overpayment. Bala disputes whether the May 1, 1992 and September 19, 1994 letter were ever sent to the Marine Corps. Bala’s inquiry into the authenticity of the letters is derived from the following: (1) upon learning of the overpayment, Bala instructed Heath to send a letter to the Marine Corps regarding the potential overpayment. Although he signed the May 1, 1992 letter, Heath does not recall writing or signing the letter. Even if Heath did write and sign the letter, he would not have sent the letter out himself; instead, Alan Skott (American Optical Corporation’s controller and Heath’s supervisor) would have been responsible for reviewing and approving the letter before it could be mailed; and, (2) upon Bala’s request, the Marine Corps sent Bala copies of all letters they had in their file regarding the overpayment. Bala received copies of the May 1, 1992 letter and September 19, 1994 letter (as well as the subsequent communications). The two letters in dispute were Bates stamped and marked with “bcc” lines, indicating that they were copies sent to the Marine Corps by AOtec, Inc. In addition, the Marine Corps does not have the original letters. The Defendants have not produced any proof of mailing for the May 1, 1992 or September 19, 1994 letters.
More importantly, Bala suggests that but for Bala’s persistence, the Defendants would not have informed the Marine Corps about the overpayment. In his affidavit, Bala cites the following incidents in support of his contentions. Lariy Gader replaced Heath in 1992. After his resignation, and at Cunniffe’s request, Heath spoke with Cunniffe regarding the status of the Marine Corps contract and the outstanding amount overpaid. While Heath opined to Cunniffe that it was a black- and-white case, and that the Marine Corps was entitled to the refund, Cunniffe indicated to Heath that, in his opinion, it was “shades of gray,” and Heath should not discuss the issue with anyone.
At some point after Gader assumed Heath’s position, Bala approached Gader to inquire about the status of the May 1, 1992 letter. At that time, Bala was told by Gader that because the Marine Corps was now on notice of the potential overpayment, it was up to *615 the Marine Corps to Investigate the issue. Bala relied upon Gader’s information.
Bala next questioned Gader about the overpayment in 1994. By that time, the Marine Corps had conducted its customary “closeout” audit of the contract. Gader informed Bala that American Optical Corporation would need to decide whether to return the overpayment at this point. Perturbed by this response because of the potential criminal and civil penalties for withholding the overpayment, Bala approached Dacoles (the American Optical Corporation accounting manager) to inquire about the outstanding amount. Dacoles informed Bala that AOtec, Inc. did not bring the overpayment to the attention of the Marine Corps auditors at the time of the closeout audit, nor did the Marine Corps discover it.
Suspecting that the Defendants’ actions were designed to obscure the existence of the overpayment, Bala next approached the Defendant Cunniffe. Bala met with Cunniffe in April 1994, at which time Bala told Cunniffe that withholding the fact of overpayment from the Marine Corps, a government entity, presented the Defendants and the officers of the Defendant corporations to potential liability. At that time, Cunniffe promised to look into the matter.
On May 13, 1994, after returning from a business trip, Bala was terminated. While the Defendants cite “poor performance,” “declining sales,” and “unwillingness to follow directives” as reasons for his termination, Bala contends that he did not learn of any of these reasons until after his termination. Instead, Bala suggests that he was terminated because of his insistence that the Defendants comply with the applicable laws, rules and regulations in the return of the Marine Corps’ overpayment on the contract.
In July 1994, after his termination, Bala met with Cunniffe. At that meeting, Bala informed Cunniffe that in his opinion, Cunniffe’s and the corporate Defendants’ action or inaction with respect to the overpayment were in violation of the law.
DISCUSSION
Bala alleges in Count I of his Complaint that he was wrongfully terminated. Bala’s claim is that he was terminated as a result of his attempt to comply with FAR rules and regulations with respect to the overpayment by the Marine Corps. Bala suggests that because he persistently urged the Defendants to engage the Marine Corps in an audit of the contract, he was terminated. Bala contends that had he not taken the steps that he did, the Defendants would not have informed the Marine Corps of the overpayment and refunded the money. Bala cites his attempt to comply with the law in an appropriate manner as the basis for his termination.
A. Summary Judgment Standard
Summary judgment will be granted where there are no genuine issues of material fact and where the record presented entitles the moving party to judgment as a matter of law. See Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c) (1997). The moving party bears “the burden of demonstrating that there is no genuine issue of material fact on every relevant issue." Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “[A] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in rule 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party “establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact.” Pederson, 404 Mass. at 17. If the opposing party demonstrates that there are genuine issues of material fact, summary judgment is inappropriate. See id.; Mass.R.Civ.P. 56(c).
B. The Merits of Bala’s Wrongful Termination Count
For the Defendants to be successful on their motion for summary judgment, they must demonstrate that Bala will be unable to prove at a trial that he was wrongfully terminated. The parties agree that Bala was an at-will employee, who, given his status, could be fired at any time with or without cause. However, Bala contends that his termination was the result of his insistence that the Defendants comply with the law, and thus, his termination was in violation of public policy. The Defendants suggest that there are other reasons for his termination, and even if Bala was terminated because of his actions regarding the Marine Corps contract overpayment, his termination does not fall into the public policy exception to terminating at-will employment.
It is important to note at the outset that Bala has presented sufficient countervailing evidence to demonstrate that a genuine issue of material fact exists as to whether his termination was the result of his actions regarding the Marine Corps contract overpayment, or whether the reasons cited by the Defendants motivated Bala’s termination. Those genuine issues of material fact are abundant, and are set forth above. They need not be reiterated here.
However, the main issue for determination at this time is whether, assuming for the purpose of this motion only that Bala was terminated because of his method of handling the overpayment, his termination was in violation of public policy. Assuming for the purpose of this motion only that Bala was terminated for this reason, if this motivation for Bala’s termination is not in violation of public policy, the Defendants *616 are entitled to summary judgment. Whether “there is a basis for finding that a well-defined, important public policy has been violated” as a result of the employee’s termination is a question of law. See Mello v. Stop & Shop Companies, Inc., 402 Mass. 555, 561 (1988).
The public policy exception to the termination of at-will employees is narrow, but has received recognition in this Commonwealth. See King v. Driscoll, 418 Mass. 576, 582 (1994); Flesner v. Technical Communications Corp., 410 Mass. 805, 810-11 (1991); SmithPfeffer v. Superintendent of the Walter E. Fernald State Sch., 404 Mass. 145, 149 (1989); Hobson v. McLean Hosp. Corp., 402 Mass. 413, 416-17, (1988); DeRose v. Putnam Management Co., 398 Mass. 205, 209-11 (1986) and cases cited; Cort v. Bristol-Myers Co., 385 Mass. 300, 306-07 (1982). For the exception to apply, the public policy must be one which has been “clearly established.” See King, 418 Mass. at 582. Clearly established public policies include cooperation with government officials in criminal investigations, even when not compelled to do so by law, see Flesner, 410 Mass. at 810-11; obeying the law by enforcing safety laws which an employee is obligated to enforce, see Hobson, 402 Mass. at 416-17; refusing to disobey the law, see DeRose, 398 Mass. at 209-11; and refusal to give up a constitutionally protected right, see Cort, 385 Mass. at 306-07. Termination also violates public policy if it follows the employee’s assertion of a legally enforceable right. See Smith-Pfeffer, 404 Mass. at 149.
The Supreme Judicial Court has intimated that it would be a violation of public policy, and hence wrongful discharge, if an employee was fired for actually reporting or threatening to report his employer’s criminal conduct. See Mello, 402 Mass. at 559; Prader v. Leading Edge Products, Inc., 39 Mass.App.Ct. 616, 618-19 (1996). In addition, although there is no case law in Massachusetts specifically adopting the principle, the Mello Court also stated that where an employee may incur criminal liability for the wrongful acts of his employer, the employee cannot be discharged for attempting to correct those wrongs against his employer’s wishes. See id. at 559, n.4.
The Massachusetts courts acknowledge whistleblowing as a public policy exception to the general rule governing the discharge of at-will employees. The Massachusetts Superior Court (Toomey, J.) held that “it may be a violation of public policy to terminate an employee who is doing what the law encourages, even if the activity is not specifically required by law ...” Holden v. Worcester Housing Auth., 4 Mass. L. Rptr. 61, 1995 WL 809991, 2 (1995), citing Flesner, 410 Mass. at 810, and G.L.c. 149, §185(b)(l), added by St. 1993, c. 471.[2] In Holden, the plaintiff was discharged after reporting the defendant’s improper activities to a public authority. See Holden, 4 Mass. L. Rptr. 61, 1995 WL 809991 at 1. The Court held that whether the plaintiff s termination was based upon his “whistleblowing” was a question for the jury, but that if in fact the whistleblowing was the basis for the termination, it was a violation of public policy. See id. at 2.
With the above case law as guidance, this Court denies the Defendants’ motion for summary judgment. As noted above, Bala has presented sufficient evidence to create a genuine issue of material fact regarding the basis for his termination. It is apparent from the direction of the above case law that if Bala was fired because he attempted to notify the Marine Corps that AOtec, Inc. was holding nearly $400,000.00 of monies it overpaid through the Marine Corps contract, this would be a violation of public policy. Bala, by exercising his rights under G.L.c. 149, §185(b)(l), was attempting to notify a public entity, namely the Marine Corps, of the actions of the Defendants which he believed to be in violation of the FAR rules and regulations, and which could potentially subject himself, the Defendants, and the officers of the corporate Defendants to liability.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Defendants’ Motion for Summary Judgment on Plaintiffs Wrongful Termination Count is DENIED.

 “An employer shall not take any retaliatory action against an employee because the employee . . . [djiscloses ... to a public body an activity, policy or practice of the employer... that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law..” G.L.c. 149, §185(b)(l).