Borenstein, J.
INTRODUCTION[2]
Plaintiff Rosemary Traini, an attorney, filed this action against the Massachusetts Insurers Insolvency Fund and Professional Risk Management seeking compensation for professional services rendered. This matter is before the court on defendant Professional Risk Management’s motion for summary judgment pursuant to Mass.R.Civ.P. 56. For the reasons set forth below, the defendant’s motion for summary judgment is ALLOWED.
*288 BACKGROUND
The following is taken from the summary judgment record. The undisputed facts, and any disputed facts viewed in the light most favorable to the nonmoving party, are as follows. Plaintiff Rosemary Traini (Traini) is an attorney licensed to practice law in the Commonwealth of Massachusetts. On April 11, 1992, Traini was retained by United Community Insurance Company (United) to represent its insured, Donald MacLeod (MacLeod), the assistant principal of Acton-Boxborough Regional High School, in connection with two lawsuits in which he was named as a defendant. In the case of Lawrence McNulty v. Robert Kessler et. al., Middlesex Civil Action No. 91-4375, MacLeod was sued along with the school superintendent, the director of personnel and a secretary at the principal’s office (the individual defendants), for defamation and intentional infliction of emotional distress arising out of McNulty’s termination as principal of Acton-Boxborough Regional High School. In the case of Therese Sliwa v. Acton-Boxborough Regional School District, et. al., Middlesex Civil Action No. 91-8271, MacLeod and the individual defendants were sued for defamation, infliction of emotional distress and sexual harassment based on allegations that Sliwa had been sexually harassed by MacLeod and then retaliated against by her superiors.
The School District and individual defendants, including MacLeod, were insured by United for a maximum coverage amount of one million dollars. United initially sent reservation of rights letters to MacLeod with respect to indemnity coverage of him in both cases. Thereafter, United informed MacLeod that as to the McNulty case, it would provide full indemnity and defense coverage, and as to the Sliwa case, it would provide defense coverage.
MacLeod was initially investigated by the School District for his involvement in these matters and was represented by Attorney Brian Reilly, who was provided to him by the Massachusetts Teachers Union. On February 28, 1991, MacLeod entered into a “Separation Agreement” with the School District which provided that he would resign as vice principal and be assigned to the School District’s Central Office administrative staff for one year at his regular salary, after which his pension would vest. The Agreement further provided that the School District would represent MacLeod in any litigation filed by either the McNultys or the Sliwas and would indemnify him to the maximum extent permitted by General Laws Chapter 258, unless counsel determined that there was a conflict of interest between MacLeod and the School District, in which case he would be provided with independent counsel. The School District would remain liable to indemnify him but MacLeod would be responsible for his legal fees.
As a result of the investigation, it was determined that MacLeod required separate representation and United then hired Traini to represent him. MacLeod informed Traini that he had an insurance policy with the National Association of Secondary School Principals (NASSP), a nonprofit professional organization dedicated to safeguarding and advancing the interests of secondary school administrators. Defendant Professional Risk Management (PRM) administers NASSP’s insurance policies. The NASSP has a Professional Liability Program which includes a Certificate of Agreement which provides that NASSP “will pay on behalf of each member, to a limit of $400,000, all sums which the member shall become legally obligated to pay by reason of liability imposed upon him by law for damages resulting from any incident giving rise to claims made against the member arising out of the member’s activities in his professional capacity ...” The Certificate of Agreement contains the following Conditions:
F. Subrogation. In the event of any payment under this program, the Association shall be subrogated to all rights of recovery therefor against any person or organization and the assured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The assured shall do nothing after loss to prejudice such rights.
G. Other Insurance. If at the time of loss there is other insurance available to the assured covering such loss or which would have covered such loss except for the existence of this insurance, then the insurance company shall not be liable for any amount other than the excess over any other valid and collectible insurance applicable to a loss hereunder.
On February 3, 1992, PRM representative David Torraos informed MacLeod that NASSP was an excess insurer and was not participating in his defense.
Ropes & Gray was the independent counsel representing the School District in connection with the Sliwa case under a policy issued by INA/CIGNA. Traini spoke with Attorney David Dowd (Dowd), INA’s counsel in the matter, and was informed that MacLeod was not an insured under the INA policy because it became effective the year after MacLeod’s employment terminated. During a later mediation session, Dowd reiterated that MacLeod was not an insured and that INA would not be responsible for Traini’s legal fees. On July 15, 1991, prior to the filing of the Sliwa suit, when Sliwa was pursuing her sexual harassment claims with the MCAD, INA had informed MacLeod that it was disclaiming both defense and coverage of the sexual harassment claims. Thereafter, on April 14, 1993, INA wrote to the School District and stated that it was disclaiming indemnification for all defendants under Counts I, II, V, VI, VII and VIII of Sliwa’s complaint, but would defend all defendants, including MacLeod, with respect to Counts III and IV of the complaint, reserving its right of indemnification on those claims.
*289 During the course of the litigation, United was declared insolvent and placed into receivership by the New York State Insurance Commission. Defendant Massachusetts Insurers Insolvency Fund (the Fund) is an unincorporated legal entity pursuant to General Laws Chapter 175D. All matters involving lawsuits against United insureds, including the McNulty and Sliwa cases were transferred and assigned to the Fund for defense and indemnity pursuant to G.L.c. 175D. Traini contacted the Fund to determine the status of her representation of MacLeod. During conversations and correspondence memorializing said conversations, the Fund confirmed that Traini should continue to represent MacLeod and that the Fund would pay defense costs.
In October of 1994, Traini prepared for trial and appeared in Middlesex Superior Court for oral argument on a summary judgment in the McNulty case. In the fall of 1995, this Court (McHugh, J.) entered summary judgment in favor of MacLeod on all claims against him.
In September of 1995, Traini represented MacLeod during a trial in Middlesex Superior Court in the Sliwa case. On September 23, the second or third day of trial, the case settled, with the School District and INA paying the entire settlement. MacLeod was not required to contribute any funds toward the settlement and he received a complete release from the Sliwas on all claims which were or could have been asserted against him in that action. On September 23, MacLeod executed a Settlement Agreement Policy Release which provided in relevant part that in exchange for INA’s payment of $200,000 to settle the Sliwa suit, MacLeod released and discharged INA from:
all debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages, and any and all claims, demands, liabilities whatsoever of every name and nature, both in LAW and EQUITY which against. . . INA ... I now have or ever had arising out of the Sliwa claims and more specifically under any policy of liability insurance issued by . . . INA ... to the Acton-Boxborough Regional School District, including but not limited to any claim for costs, expenses, and legal fees for the defense of MacLeod against Sliwa’s and her husband’s claims. It is hereby acknowledged that this is a compromise of disputed liability and said payment is neither an admission of liability by MacLeod to Sliwa nor an acknowledgment of coverage or duty to defend by . . . INA . . . which have been disputed.
In connection with her defense of MacLeod in the Sliwa and McNulty cases, Traini incurred expenses and fees of $121,495.32 through December 3, 1996, when she demanded payment from both the Fund and PRM. However, neither the Fund nor PRM paid Traini for her representation of MacLeod in the McNulty and Sliwa cases. Accordingly, on February 10, 1998, Traini filed the present action alleging numerous claims against the Fund: breach of contract in Count I, misrepresentation and promissory estoppel in Count II, fraud in Count III, quantum meruit in Count IV and violation of Chapter 93A in Count V. The complaint further alleges the following claims against PRM: breach of contract in Count VI, quantum meruit in Count VII and violation of Chapter 93A and Chapter 176D in Count VIII. Traini has settled her claims in this action against the Fund and on January 28, 1999, this Court (Brassard, J.) dismissed the claims against the Fund and entered separate and final judgment pursuant to Mass.R.Civ.P. 54(b).
Thereafter, PRM filed the present motion for summary judgment on all claims against it. On March 27, 2000, Traini and PRM filed with this Court a Joint Notice of Partial Resolution stating that they have resolved their dispute regarding Traini’s compensation for the McNulty case. Accordingly, all that is at issue in the motion for summary judgment is Traini’s claims of breach of contract, quantum meruit and Chapter 93A in connection with the Sliwa case.
DISCUSSION
Summary judgment will be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Casseso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opponent’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion. Pederson v. Time, Inc., 404 Mass. at 17. If the moving party submits evidence that indicates the plaintiff cannot demonstrate the essential elements of a claim, summary judgment should be granted. See Kourouvacilis v. General Motors Corp., 410 Mass. at 711-12.
PRM contends that it is entitled to judgment as a matter of law on Traini’s claims on the ground that the NASSP policy does not obligate it to pay MacLeod’s defense costs in the Sliwa suit because at the time of the loss, there was other insurance available to MacLeod. PRM emphasizes that MacLeod was initially defended by United until its insolvency, and at some point was defended by INA, culminating in the settle *290 ment of the suit. However, it is not clear from the summary judgment record exactly when United’s defense of MacLeod ended, when the Fund took over that obligation, and when INA’s defense of MacLeod commenced.
Accordingly, there are genuine issues of material fact with respect to whether at all relevant times there was other insurance available to MacLeod, so as to preclude recovery under the NASSP policy.
Nonetheless, PRM further contends that it is entitled to judgment as a matter of law because MacLeod has forfeited his right to a defense under the NASSP policy by breaching the policy’s requirement that the insured do nothing after loss to prejudice NASSP’s subrogation rights. PRM contends that in executing the September 23, 1995 Settlement Agreement Policy Release, thereby releasing INA from any claim for costs, expenses, and legal fees for MacLeod’s defense against the Sliwas’ claims, MacLeod has prejudiced NASSP and committed a material breach of the insurance contract, relieving NASSP of any duty to provide a defense or coverage thereunder. An insured who takes affirmative action which prejudices the insurer’s right of subrogation is precluded from recovering under the policy. Landgren v. Aetna Life & Casualty Co., 366 Mass. 725, 726-27 (1975). In the present case, NASSP was an excess insurer which, if forced to pay defense costs, might be able to recoup such costs from another insurer such as INA. However, by releasing his right to recover defense costs from INA, MacLeod rendered worthless NASSP’s subrogation rights under the policy. Cf. id. (concluding that insured was precluded from recovering under automobile policy where her delay in presenting claim to insurer resulted in the expiration of the statute of limitations for insurer to file subrogation claim against third parties). This material breach of the insurance contract relieves NASSP of its obligation to defend or indemnify MacLeod in the Sliwa matter. Traini therefore cannot recover her defense costs from PRM.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s Motion for Summary Judgment be ALLOWED.

 The Court apologizes to the parties and counsel for the delay in the issuance of this decision, which is solely my responsibility. The delay in no way is attributable to anything counsel or the parties did or did not do.