Lauriat, J.
This litigation arises from the conversion of State Mutual Life Assurance Company of America (“State Mutual”) from a mutual to a stock company, a process known as “demutualization.” Plaintiff Center for Insurance Research (“CIR”) has brought this action pursuant to the Public Records Act, G.L.c. 66, §§10(a) and (b), to compel disclosure by the Massachusetts Division of Insurance (the “Division”) of certain documents pertaining to State Mutual’s demutualization.
The defendant has now moved to dismiss this action pursuant to Mass.R.Civ.P. 12(b)(6) or for summary judgment purauant to Mass.R.Civ.P. 56. Since both parties have submitted extensive affidavits and other documentation in support of and in opposition to the defendant’s motion, it will be treated by the court as a motion for summary judgment. See Mass.R.Civ.P. 12.
BACKGROUND
State Mutual, a Worcester, Massachusetts based company, is the fifth-oldest life insurance company in America. Until 1995, it was operated as a mutual life insurance company, meaning that its management was controlled by its policyholders, and that surplus earnings of the company were returned to the policyholders as dividends.
*563 In 1991, the Massachusetts legislature enacted G.L.c. 175, §19E, which authorizes and governs demutualization in this state. This statute, as amended in 1993, provides, inter alia:
Upon compliance with the requirements and completion of the proceedings prescribed by this section, a domestic mutual life insurance company may (i) convert into a domestic stock life insurance company... [s]uch conversion shall be accomplished pursuant to a plan which complies with the following: (1) Such plan shall be filed with the commissioner [of the Division of Insurance] and shall be approved by him as conforming to the requirements of this section and as not prejudicial to the policyholders of such company or to the insuring public, after a hearing thereon for which notice was given to the insurer, its directors, officers, employees and policyholders, all of whom shall have the right to appear and be heard at the hearing . . .
It appears that for some years before 1995, possibly even before the above statute was enacted, State Mutual was considering demutualization. In examining the ramifications of demutualization and developing the plan mandated by c. 175, §19E, State Mutual expended more than $25 million, much of which it paid to various accounting and law firms involved in advising the company on the demutualization process. It also appears that there were substantial contacts between State Mutual and the Division of Insurance regarding the development of a §19E plan that would be acceptable to the Division. Sometime in 1993 or 1994, apparently, State Mutual officially made its intention to demutualize known to the Division.
On February 28, 1995, State Mutual formally filed its demutualization plan with the Division. The public hearings mandated by § 19E took place on June 19 and June 27, 1995. CIR participated in those hearings. CIR’s executive director, Jason Adkins (“Adkins”), represented several individual State Mutual policyholders at the hearings as well. On August 2, 1995, the Commissioner of Insurance, Linda Ruthardt (“Ruthardt”), issued her Final Decision, which approved State Mutual’s demutualization plan. Prior to the §19E hearing, on March 1, 1995, CIR filed a request seeking certain records from the Division. The records sought included the following:
. .. copies of any and all correspondence that you [i.e., Commissioner Ruthardt] and/or persons on your staff have had with State Mutual . . . pertaining to their efforts to demutualize under [G.L.c. 175, §19E], In addition, please provide a schedule and summary of all conversations and meetings between you or your staff, and any employees of State Mutual regarding their plans to demutualize. In addition, please provide copies of all documents in the Division of Insurance’s possession related to this matter . ..
Discussions between CIR and the Division regarding this request ensued. Sometime in late April or early May of 1995, the Division responded to CIR’s request by producing “appointment schedules for two Division officials that [CIR had] requested, as well as the . . . public docket file in the ongoing State Mutual ‘demutualization’ proceedings ...” [December 8, 1995 Affidavit of Mindy Merow Rubin, Assistant General Counsel of the Massachusetts Division of Insurance, at ¶3). As the public docket file in these proceedings was presumably already available to the public, this response by the Division essentially amounted to a refusal of CIR’s document request.
CIR then appealed the Division’s response to the state Supervisor of Public Records pursuant to G.L.c. 66, §10(b). On August 14, 1995, the Acting Supervisor of Public Records, Mary Schwind (“Schwind”), issued a decision regarding CIR’s appeal. The Division had claimed, under G.L.c. 4, §7(26), two exemptions from disclosure of the documents sought by CIR: the first, under §7(26)(a), for materials that are “specifically or by necessary implication exempted from disclosure by statute,” to wit, G.L.c. 175, §4, which authorizes examinations of insurance companies by the Division; and the second, under §7(26)(d), for “inter-agency or intra-agency memoranda or letters relating to policy positions being developed by the agency.” In her August 14 decision, Schwind ruled (1) that any records sought by CIR that had been created pursuant to a G.L.c. 175, §4 examination of State Mutual by the Division were exempt from disclosure; (2) that materials prepared for and submitted to the Division by third-party consultants hired by the Division, such as accountants and lawyers, were exempt from disclosure under §7(26) (d); and (3) that materials submitted to the Division by State Mutual, as well as other merely factual reports, must be disclosed.
In a letter dated August 23, 1995, the Division requested that Schwind reconsider her August 14 decision. On August 31, 1995, Schwind responded to this request. She made a series of rulings, viz.: (1) that the Division no longer had an ongoing policy making role with respect to State Mutual’s demutualization; (2) that records related to the State Mutual demutualization were therefore not exempt from disclosure under §7(26)(d); (3) that pre-decision statements by legal advisors to the Division regarding whether to approve State Mutual’s plan were not exempt from disclosure; (4) that records containing factual material were not exempt from disclosure; (5) that the Division could withhold opinions and recommendations specifically geared to litigation anticipated as a result of the approval of the State Mutual demutualization; and (6) that intra-agency or inter-agency materials regarding the future treatment of demutualization were exempt from disclosure.[1]
The effect of the two rulings, when read together, was the following:
1. Any records that had been created pursuant to a G.L.c. 175, §4 examination of State Mutual were exempt from disclosure;
*564 2. Opinions and recommendations specifically geared to litigation anticipated as a result of the approval of the State Mutual demutualization were exempt from disclosure;
3. Inter-agency or intrá-agency materials regarding the future treatment of demutualization were exempt from disclosure;
4. Any pre-decision statements by advisors to the Division[2] regarding whether to approve the State Mutual demutualization were not exempt from disclosure;
5. Any materials in the Division’s possession regarding the State Mutual demutualization were subject to disclosure; and
6. Any records containing factual material were not exempt from disclosure.
In short, only records created pursuant to a c. 175, §4 examination of State Mutual, inter-agency or intra-agency materials regarding the future treatment of demutualization, and opinions and recommendations by advisors to the Division specifically geared to anticipated litigation regarding the approval of State Mutual’s demutualization plan were exempt from disclosure.[3]
On September 1, 1995, CIR and State Mutual jointly announced that CIR would not appeal the Division’s ruling approving the State Mutual demutualization. This having settled the controversy between CIR and State Mutual, the battle now became joined between CIR and the Division. A series of letters passed between these two parties. It was not until September 27, 1995, that the Division made any documents available to CIR pursuant to Schwind’s August 14 and August 31, 1995 rulings. It appears that the number of documents withheld from CIR by the Division greatly exceeded the number produced.
On November 14, 1995, CIR filed a complaint in Superior Court pursuant to G.L.c. 66, §10(b), seeking an order compelling production of documents by the Division, as well as an injunction preventing the Division from withholding similar documents in the future, and expenses, costs, and attorneys’ fees. The documents sought by CIR are:
a. All correspondence between the Division and its agents and Advisors, and State Mutual and its agents and consultants concerning State Mutual’s demutualization;
b. All other documents disclosing communications between the Division and its agents and Advisors and State Mutual and its agents and consultants concerning the demutualization;
c. All other documents relating to State Mutual’s demutualization.
Complaint, ¶34. On December 9, 1995, Commissioner Ruthardt moved to dismiss CIR’s complaint, or in the alternative for summary judgment.
DISCUSSION
Summary judgment must be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving pariy bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). With respect to any claim on which the party moving for summary judgment does not have the burden of proof at trial, it may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouuacilis v. General Motors Corp. 410 Mass. 706, 716 (1991). Ruthardt raises two arguments in her motion. First, she contends that CIR has presented no evidence to support its claim that there are records in the Division’s possession that are being unlawfully withheld. Second, she argues that any materials being withheld were acquired by the Division pursuant to a c. 175, §4 examination of State Mutual. If Ruthardt is correct that the materials in her possession are c. 175, §4 examination records, then she can avail herself of c. 175, §4(12), which provides that
. . . the records of any . . . examination . . . and the information contained in the records, reports or books of any company . . . examined pursuant to this section shall be confidential and open only to the inspection of the commissioner, or examiners and assistants.
I. Evidence of Wrongful Withholding of Documents
Ruthardt asserts first that “(i]n order to avoid summary judgment, CIR must allege sufficient facts ... to establish that the Division is not complying with . . . the two orders issued by the Supervisor of Public Records.” (December 8, 1995 Memorandum in Support of Defendant’s Motion to Dismiss Complaint or for Summary Judgment, p. 9.) She argues that her decisions to withhold documents from CIR should be accorded great deference by this court, and she contends that CIR’s allegations of wrongful withholding are unsupported.
These arguments notwithstanding, the December 28, 1995 Supplemental Affidavit of Jason Adkins, Esq. in Opposition to Defendant’s Motion to Dismiss or for Summary Judgment contains ten attached exhibits that together raise a genuine issue of material fact as to whether Ruthardt’s withholding of documents from CIR was in fact lawful. These ten exhibits are documents Adkins obtained pursuant to the New York state public records statute from the New York State Insurance Division, which like its Massachusetts counter *565 part conducted an investigation into State Mutual’s demutualization plan. These documents unquestionably raise a genuine issue of material fact as to whether the Division has obeyed the law and complied with Schwind’s decisions in deciding what documents to disclose to CIR.
In evaluating the Division’s withholding of these ten documents (seven of which on their face indicate that they were sent to the Division, and therefore are presumed to be in its possession), this court bears in mind that only two relevant exemptions from disclosure are available to the Division: (1) for records created pursuant to a c. 175, §4 examination of State Mutual; and (2) for inter-agency and intra-agency materials regarding the Division’s future treatment of demutualizations. It appears quite unlikely that the documents obtained by Adkins from New York, and apparently withheld by Ruthardt, fall into either or these two categories.
These documents include five from State Mutual’s actuary, Milliman & Robertson (“Milliman”), that were sent to the Division, and that address various aspects of State Mutual’s demutualization. Also included is a document from Debevoise & Plimpton (“Debevoise”), State Mutual’s attorneys, that was sent to the Division regarding the demutualization. Three other documents, one each from Milliman, Debevoise, and State Mutual, were sent to the New York State Insurance Division and allegedly are in the possession of the Massachusetts Division of Insurance. Finally, there is one document from Alex, Brown & Sons, the Division’s investment banking advisor, that was sent to the Division regarding the State Mutual demutualization. There is without question at least a genuine issue of. material fact as to whether these documents were legitimately exempt from disclosure under the rulings of the Supervisor of Public Records.
II. Chapter 175, §4 Examination Records
Ruthardt also contends that the withheld materials are statutorily protected from disclosure because they came into the Division’s possession as G.L.c. 175, §4 examination records. She claims that she ordered an examination of State Mutual in January 1994, and that this examination continued through June, 1995. Further, relying on ihe language of G.L.c. 175, §4(12) (“the records of any . . . examination . . . and the information contained in the records, reports or books of any company . . . examined . . . shall be confidential”), Ruthardt essentially argues that every single document in her possession regarding State Mutual is shielded from disclosure. At the hearing on this motion, Ruthardt contended that once a §4 examination of a company has begun, any documents, of any kind, regarding that company, that come into the possession of the Division are exempted from disclosure by c. 175, §4(12).
The parties dispute the nature and scope of a §4 statutoiy examination. Ruthardt contends, as indicated above, that an examination, once begun, is all-encompassing, and that every document, of whatever kind, regarding the target company that comes to the Division qualifies as an examination record. CIR, by contrast, argues “that Sec. 4 examinations are lypically routine and narrow financial solvency reviews . . .” (December 21, 1995 Affidavit of Jason Adkins, Esq. in Opposition to Defendant’s Emergency Motion to Stay Discovery Pending Ruling on Dispositive Motion). Neither side, however, has presented sufficient evidence to allow the court to ascertain conclusively which view is correct. In addition, there are no reported decisions construing the scope of the §4(12) exemption, which was added to G.L.c. 175, §4 in a 1993 amendment. The court notes, however, that the information presently before it on this motion favors CIR’s interpretation of the scope of a c. 175, §4 examination.
In particular, in Schwind’s August 14, 1995 decision, addressing the c. 175, §4(12) exemption, she ruled that “certain responsive records regarding the Division’s examination of State Mutual which were created pursuant to G.L.c. 175, §4(2)” (emphasis added) were exempt from disclosure. Schwind’s use of the word “created” suggests strongly that she considered examination records to be a finite set of materials, presumably including reports and analyses of the financial condition and structure of the examined company, but not encompassing any and all materials having any relation to the company whatsoever.
In addition, the Division’s own behavior in this case suggests that it itself never considered examination records to be an all-encompassing category until it had failed in every other argument for exempting the materials it had withheld. For instance, Schwind’s August 14 ruling mentioned G.L.c. 175, §4 relatively briefly as a possible basis for withholding documents; Schwind devoted one page of a six-page ruling to §4. This suggests that the Division only argued it before her as a limited basis for exemption of some of the requested documents. In her August 14 decision, Schwind wrote,
[i]t is my understanding that during a June 15, 1995, telephone conversation with Mr. Gaines [Gregory P. Gaines, a staff attorney with the Public Records Division] you [Mindy Merow Rubin, Assistant General Counsel to the Division of Insurance] stated that there are certain responsive records regarding the . . . examination of State Mutual [for which the Division was claiming c. 175, §4 as an exemption from disclosure] . . . (emphasis added)
Thus, it is evident that the Division itself, well after the examination was completed, did in fact concede that only “certain” of the documents it had withheld from CIR could be classified as examination records. This is of course contrary to its current position. There is nothing inherently improper with a litigant changing its position on a legal issue at different stages of litigation; but the Division’s earlier limited assertion of the G.L.c. 175, §4 exemption is strong evidence that the general and typical interpretation of that provision is relatively narrow, and that in the absence of this *566 litigation, the Division would have been unlikely to adopt the interpretation it now advances.
Even more striking in this regard is the fact that Ms. Schwind’s second ruling, issued on August 31, 1995, made not a single mention of the G.L.c. 175, §4 exemption, which suggests that this exemption was not even raisedby the Division in its argument for reconsideration of Schwind’s August 14 ruling. It is difficult to conclude that, if the common understanding of the §4 exemption is that it covers every document of whatever kind regarding the target company, the Division would not have at least raised that exemption as an argument in favor of reconsidering the August 14 ruling. Clearly Schwind did not understand the §4 exemption to be so all-encompassing, and neither did the Division, until all other possible arguments in support of its withholding of documents had failed. The Division, before developing the position it has adopted in this litigation, no doubt thought of examination records as simply a finite category of materials involving the target company’s financial condition and structure. Such a view is eminently consistent with the language and intent of the statutory scheme.
Finally, three documents submitted to this court by the Division reinforce the conclusion that any examination of State Mutual undertaken in this case was understood to be limited in scope. The first document, entitled “Proposed Agenda — January 24, 1994/State Mutual Demutualization Project,” although it does not identify (nor has the Division informed the court) who wrote it, to whom it was sent, or even from which of the many organizations involved in the State Mutual project it originated, lists a “target examination” as one of four “important Jirst steps” (emphasis added). It identifies the examination as being the product of an “accounting” “[p]oint[] of view,” as distinguished within the document from “[a]ctuarial,” “[investment,” and “[ljegal” “[p]oints of view.” The second document, entitled “AGENDA/State Mutual Demutualization/February 3, 1994,” likewise of unknown origin, contains, as one of eight ‘Topic[s],” the heading “Sequence of Transaction Steps,” under which the fourth out of six is “Statutory Examination.” This is distinguished from the last “step,” “Responsibilities under 19E.” Lastly, aFebruary25,1994 letter from State Mutual’s Chief Financial Officer, Eric A. Simonsen, to Cynthia Martin, Director of Financial Regulation and Licensing at the Division, lists, as a “substantive matter[] which should be given attention in the interim,” “beginning the process for your statutory examination,” which is distinguished from “the completion by you and your advisors of business due diligence at State Mutual and its affiliated companies, and the continuation of the various actuarial matters currently being addressed by your actuarial advisors and ours.”
In short, it appears that until an entirely new theory became necessaiy to support the Division’s position in this litigation, the Division and all other parties involved viewed G.L.c. 175, §4 examinations as relatively narrow inquiries into the financial health and structure of insurance companies. This view is entirely consistent with the language and intent of c. 175, §4 itself.
Even the three above-discussed documents, which were submitted by the Division as evidence that an examination did in fact take place, are hardly conclusive proof of that proposition. Each of the three documents only refers prospectively to the fact that an examination is expected to occur at some time in the future.[4]
If an examination has indeed taken place, this court simply cannot say as a matter of law that its mere occurrence is sufficient to exempt from disclosure all documents relating to the examined company.[5] In addition, the documents submitted to this court by CIR are sufficient to raise a genuine issue of material fact as to whether the Division has unlawfully withheld documents that have no legitimate claim to be classified as examination records, or to fall under the other available exemptions from disclosure. Summary judgment for Ruthardt therefore is not appropriate.
ORDER
For the foregoing reasons, the Defendant’s Motion to Dismiss or for Summary Judgment is DENIED.

It is worth noting that in this attempt to persuade Schwind to reconsider her August 14 ruling, the Division relied almost exclusively on G.L.c. 4, §7(26)(d) (which protects from disclosure “inter-agency or intra-agency memoranda or letters relating to policy positions being developed by the agency”). Having largely failed in that attempt, the Division has abandoned its reliance on exemption (d) and now vigorously argues for the application of c. 4, §7(26)(a) (a provision it previously neglected almost entirely), which exempts from disclosure materials that are ’’specifically or by necessary implication exempted from disclosure by statute."

Although Schwind’s August 31 ruling referred specifically to pre-decision statements made by legal advisors, her reasoning applies equally to the statements of other kinds of advisors as well.

The Division has relied only on the two exemptions outlined in the Supervisor of Public Records’s decision, viz., (1) c. 175, §4(12), regarding examination records; and (2) the exemption for inter-agency and intra-agency materials regarding the treatment of future demutualizations. See January 2, 1996 Affidavit of Elizabeth A. McDonald, Senior Assistant General Counsel of the Massachusetts Division of Insurance, at ¶5.

The assertion by counsel for Ruthardt at oral argument that an examination of State Mutual was ordered in January 1994 is contradicted by the February 25, 1994 letter from Eric Simonsen to the Division, with its prospective reference to “beginning the process for your statutory examination.”

Indeed, if this were the case, the Division would have violated the law already by turning over the documents it previously has disclosed to CIR, because c. 175, §4(12) imposes a mandatory veil of secrecy over examination records (examination records “shall be confidential and open only to the inspection of the commissioner, or examiners and assistants [or appropriate state and federal agencies]”). The fact that the Division has in fact released some materials regarding State Mutual to CIR is further evidence that until this litigation, it had never entertained the argument it now advances, that every single document related to State Mutual is protected by c. 175, §4(12).