Cowin, J.
INTRODUCTION
On August 1, 1995, the plaintiff, James M. Corbett, brought suit against the defendant, Brook Run Development Corp., for fraud and deceit, breach of contract, breach of warranty, negligence and violation of G.L.c. 93A. On November 5, 1996, this matter came before the Court for hearing on defendant’s motion for summary judgment. For the reasons stated below, the defendant’s motion for summary judgment is DENIED.
BACKGROUND
The undisputed facts in the summary judgment record establish the following. The defendant has two principals, David MacCready and Craig Rafter, who have built hundreds of homes together during a twenty-year period. The defendant acquired[1] approximately twenty lots in Westwood, Massachusetts for the purpose of building and selling single-family homes. However, there was a certain parcel of land in this subdivision known and numbered as lot 20 Skyline Drive on which the defendant did not build itself, but rather resold as a buildable lot.
Initially, the defendant intended to build a house on this lot at the same elevation and location as that ultimately selected by the plaintiff.[2] In September 1993, the defendant obtained approval from the local subdivision’s design review board to build the house according to a specific site plan. The plan positioned the top of the foundation at an elevation of two hundred and fifty-four feet. The defendant could not deviate from the approved plan without resubmitting a second plan for written approval. Although the defendant believed that other elevations were more cost-effective, this particular elevation and location were selected for the house. The lot had been listed for over a year as one for building a custom home but in the absence of an interested buyer, the defendant decided in October 1994 to proceed with the construction of a “spec”[3] home on the lot.
The defendant cleared part of the lot in furtherance of its plan. In November, 1994, the defendant’s principals discussed construction elevations in light of the sloped lot. The defendant considered positioning the house on the back portion of the lot but rejected this alternative as unacceptable because the house would have been “out of line” with the adjacent homes. Instead, the defendant began to bring clay fill onto the site in order to level the rear portion of the lot and make a useable back yard area. The defendant did not have to pay for the fill, simply for the expense of transporting the fill to the site. The plaintiff argues that the fill was not structural quality and it was not meant to be built on but rather was designed to fill the hollow area in the rear portion of the lot behind where the defendant intended to build the house.
When the fill started to arrive in November 1994, the defendant suspended its plans to build and listed the lot for sale as a buildable lot with subdivision approvals, referring to the approved plan with the construction elevation of two hundred and fifty-four feet. The defendant continued to have the fill delivered through January 1995, at which time it raised the list price of the lot from three hundred and fifty thousand dollars ($350,000.00) to three hundred and ninety thousand dollars ($390,000.00). The defendant claimed the fill enhanced the lot and made it more valuable than the other lots.
In February 1995, the plaintiff viewed the lot. The plaintiff engaged the services of a construction supervisor, Mr. Bumpus, who was hired to work with the plaintiff in obtaining all approvals for building a home on the lot'■and to supervise construction.[4] The plaintiffs main concern prior to making an offer to purchase the lot was the possibility that the lot would require major site work which would cause delay and expense. Since the defendant owned the lot and prepared it for construction before bringing in fill, the plaintiff inquired whether any blasting would be necessary on the lot prior to construction. The defendant, through its agents, told the plaintiff that no blasting would be required prior to putting in a foundation in the filled area. The plaintiff relied on the defendant’s representation and offered to purchase the property without first requesting access to test the subsurface conditions. The parties entered into a purchase and sale agreement for the lot on February 17, 1995. Rider A to the agreement included a “no blasting” clause. This clause stated:
It is understood and agreed by the parties that the premises shall be in compliance with the provisions of this Agreement only if: . . . (f) no blasting is required prior to the pouring of the foundation if placed in filled area.
The plaintiff purchased the lot pursuant to the purchase and sale agreement on March 2, 1995. Paragraph thirteen of the purchase and sale agreement provided:
The acceptance of a deed by the Buyer or his nominee as the case may be shall be deemed to be a full performance and discharge of eveiy agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the deliveiy of said deed.
Immediately after the closing, the plaintiff began constructing a single family home in the filled area on the lot. This area was the area in which defendant had originally planned to construct a house. Upon grading in preparation for excavation, the plaintiffs excavator discovered ledge just under the surface of the fill. After further preparation, the following were discovered: 1) *328 a steep original slope of ledge across the middle of the plaintiffs proposed footprint; and 2) the fill material, which would not support the excavation equipment, was a silty clay material with no load-bearing capacity. The fill had to be removed from the lot prior to construction and the plaintiff incurred substantial costs related to the blasting, excavation and landscaping, all of which were necessary due to the extensive ledge in the filled area. The plaintiff claims that blasting would also have been necessary in order to site a house according to the defendant’s approved plan.
In April 1995, the defendant was informed by the plaintiffs attorney that blasting was required on the site and that the plaintiff intended to hold the defendant responsible for the costs associated with such blasting. Two officers of the defendant visited the premises and observed that the fill material had been cleared from the area where the plaintiff intended to construct his foundation and that ledge and rock had been thus exposed. The defendant contacted the plaintiffs attorney and asked him to halt the construction on the site so that the defendant could have the opportunity to explain to the plaintiff how to construct the foundation without removing the rock.[5] The plaintiffs attorney informed the defendant that it was too late and that the plaintiff intended to proceed with the blasting and excavation of the rock.
On June 9, 1995, the plaintiff made written demand upon the defendant pursuant to G.L.c. 93A. The defendant made no offer of settlement in its response. Accordingly, the plaintiff commenced the present suit against the defendant seeking to recover damages for the costs associated with the blasting and excavation of the blasted material and in removing the clay fill material.
DISCUSSION
Summary judgment is granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and of establishing “that the summary judgment record entitles the moving party to judgment as a matter of law.” Pederson v. Time, Inc , 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial must demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party then must respond by articulating specific facts which establish the existence of a genuine issue of material fact. Pederson v. Time Inc., 404 Mass. 14, 17 (1989).
The defendant now seeks summary judgment. However, the contract between the parties clearly justifies plaintiffs position, insofar as the “no blasting" provision is concerned. If the language of the provision is given its normal meaning, the defendant contracted to sell the plaintiff a lot for the construction of a house which did not require blasting. Given this language, summary judgment for the defendant is precluded.
The defendant had presented three arguments in an effort to avoid liability: (1) the “no blasting” provision of the purchase and sale agreement was not a representation or warranty that survived delivery of the deed but merely a condition precedent to plaintiffs obligation to purchase the lot; (2) the plaintiff could have terminated the purchase and sale agreement and recovered his deposit if blasting were required for the construction of a foundation but the plaintiff cannot sue for damages after accepting the deed;[6] and (3) the plaintiff could have constructed a foundation without blasting but instead found blasting to be necessary because of his particular aesthetic concerns regarding the construction of the house.
In response to the defendant’s argument that the “no blasting” provision is merely a condition precedent to the plaintiffs obligation to perform under the agreement, the plaintiff maintains that a condition precedent, by its nature, contemplates a condition which can be ascertained by one of the parties prior to the closing and the passing of title, the failure of which would trigger an option to withdraw from the agreement. Prior to making an offer the plaintiff wanted to know whether the lot needed any major site work in order to construct a home. The plaintiff alleges that he specifically asked the defendant, through its agent, whether blasting was required on the lot and was assured by the agent that blasting would not be necessary. The plaintiff argues, that he relied on this representation and did not have test borings[7] done prior to closing.[8] Further, the plaintiff claims that the parties included the “no blasting” provision in Rider A of the purchase and sale agreement as further assurance of the defendant’s representation.
Although the “no blasting” clause does not include specific language which identifies it as a representation or warranty, it also does not contain any “condition precedent” language. Given the alleged facts and the agreement, the summary judgment record contains sufficient evidence to warrant a finding that the defendant made a representation or warranty that no blasting would be required. This conclusion is buttressed by a comparision of the “no blasting” provisions with the language in Section 11 of Rider A to the purchase and sale agreement, which is a condition precedent. Section 11 states: “Buyer’s obligations hereunder are contingent upon the availability (at normal premium rates) of an owner’s title insurance *329 policy without exceptions other than the standard printed exceptions contained in the ALTA form currently in use, and those exceptions set forth in Paragraph 4 of this Agreement.”
The defendant’s second ground for seeking summary judgment is that even if the “no blasting” clause were a representation or warranty, the plaintiffs acceptance of the deed extinguished any claim for a breach. The defendant points to the following standard language in the purchase and sale agreement in support of its position: “The acceptance of a deed by the BUYER or his nominee as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed except such as are, by the terms hereof, to be performed after the delivery of said deed.” (Paragraph 13, Purchase and Sale Agreement.) This language embodies the doctrine that acceptance of a deed ordinarily merges all prior proposals and stipulations and the deed is deemed to express the final and entire contract between the parties. Pybus v. Grasso, 317 Mass. 716, 717-19 (1945). To this general rule, however, Massachusetts decisions have carved an exception that ”[p]romises in the original agreement which are additional or collateral to the main promise to convey the land and are not inconsistent with the deed as given are not necessarily merged in the deed, but may survive it and be enforced after the deed is given.” McMahon v. M & D Builders, Inc., 360 Mass. 54, 59 (1971), quoting Pybus, 317 Mass. at 719.
The “no blasting” provision is within the exception to the general rule quoted above, that is, the defendant’s promise that no blasting was required is additional and separate to the promise to convey title and therefore is not inconsistent with the deed. The need for blasting has no impact on the sufficiency of title or its marketability. Instead, blasting is an issue of additional time, expense and inconvenience. Further, the Supreme Judicial Court has recognized that “[t]he ’’acceptance of deed" clause has generally been applied only to title matters and not to construction problems." Pederson v. Leahy, 397 Mass. 689, 691 (1986), citing McMahon, 360 Mass. at 59-60. The alleged undisclosed need for blasting is a construction problem which does not affect title and therefore is not encompassed by the merger doctrine. Further, it is clearly a commitment to be performed after the delivery of the deed.
Lastly, the defendant argues that even if the “no blasting” clause could be construed as a warranty or representation that was not extinguished by acceptance of the deed, there is no evidence that blasting was required. The defendant maintains that the house could have been built on the lot without the need for blasting and that the blasting was only necessitated by plaintiffs unreasonable requirements for his home and lot; the plaintiff contends otherwise. Based on the summary judgment materials as described in the background section, I find a genuine issue of material fact exists on this issue. Accordingly, summary judgment is inappropriate.
ORDER
For the foregoing reasons, it is hereby ORDERED that Brook Run Development Corporation’s motion for summary judgment is DENIED.

 The date of this acquisition has not been provided by the parties.

 The plaintiffs builder, George E. Bumpus, Jr., used the engineering plans prepared for the defendant, which were approved by both Beals & Thomas Engineering, Inc. of Westborough and by the design review board of High Ridge Estates which governs the lot. Although Mr. Bumpus’ engineer modified the plans in other respects, the house was built at the same elevation and location as those shown on the defendant’s plans.

 Although the term “spec” is not defined by the parties, the Court assumes, based on the surrounding facts, that the term refers to a house which is built with no assurance of sale but with the speculation that it will be purchased.

 Since Bumpus viewed the lot several years earlier with another prospective builder and he built several homes in the same subdivision, Bumpus was somewhat familiar with the premises.

 The defendant claims that a foundation could have been constructed for the plaintiffs home without blasting. In support of this assertion, the defendant states that the foundation could have been constructed on the rock already present in the cleared area and on structural fill which the plaintiff could have brought in and placed on top of the rock without any difficulty or substantial expense. However, the plaintiff removed the rock by blasting in order to lower the elevation of the home below the elevation of the road. The defendant maintains that blasting also could have been eliminated by moving the location of the foundation farther back from the road and a double foundation could have been constructed at that point.

 The first two arguments are merely different forms of saying the same thing: that the acceptance of the deed either eliminates the promise altogether or waives any claim plaintiff may have.

 The plaintiff claims that test borings are generally done in situations where neither party is in a position to know what conditions exist beneath the surface. In such situations, a seller could not make a guarantee with regard to subsoil conditions because the seller would have no knowledge on which to base his claim. In the case at bar, however, the defendant’s actual knowledge of the site conditions and costs made it both reasonable and expedient to ask for and obtain assurances concerning concealed conditions and to forego independent testing in reliance on that assurance.

 As a buyer, the plaintiff may ask specific questions about the condition of the property. Although there may be “no duty imposed upon one party to a transaction to speak for the information of the other ... if he does speak with reference to a given point of information, voluntarily or at the other’s request, he is bound to speak honestly and to divulge all the material facts bearing upon the point that lie within his knowledge. Fragmentary information may be as misleading ... as active misrepresentation, and half-truths may be as actionable as whole lies . . .” Kannavos v. Annino, 356 Mass. 42, 48 (1969) (citations omitted).