Fremont-Smith, Thayer, J.
The plaintiff, Jean Miles (“Miles”), brings this action against the defendant, Beneficial Massachusetts, Inc. (“Beneficial”) alleging fraud, negligent misrepresentation, unconscionability, tort, infliction of emotional distress, violations of the Federal Truth in Lending Act (‘TILA”), 15 U.S.C. *162 §1602 et seq.; violations of Massachusetts Consumer Credit Cost Disclosure Act (“MCCDA”), G.L.c. 140D; violations of Massachusetts High Cost Mortgage Loans Regulations, 209 CMR §32.32; and violations of G.L.c. 93A. This matter is before the court on the Beneficial’s motion for summary judgment on all counts and Miles’ motion for summary judgment on the counts concerning statutory lending law violations.

BACKGROUND

The complaint in this case consists largely of vague, non-specific factual allegations which provide no coherent story. It is possible, however, from citations to the summary judgment record in the briefs to glean that the following facts are alleged, most of which are disputed by defendant. A mortgage was taken out by Miles with Beneficial on July 9, 2001. Prior to this mortgage, Miles had engaged in at least one other financial transaction with Beneficial. In October of 2000, she took out an additional unsecured loan for $8,500 with an annual percentage rate of 23.195%.
In June of 2001, Miles had credit card debts and was fearful of having her residence foreclosed. An agent from Beneficial informed her that, as a homeowner, she could consolidate these debts by obtaining a home mortgage loan from Beneficial on her residence. Just prior to the July 9, 2001 closing, a bank agent, “Phillip,” informed her that the closing costs for the loan would be $20,000. She alleges that Philip told her that if she did not pay this fee, he would not take the necessary steps to ensure the closing of her loan. She then asked Phillip the amount of his commission fee ($500) and said that she would pay that sum to him directly if he would make certain that the closing took place at a more reasonable closing fee. Thereafter, the listed closing fee was reduced to $9,938.61 but, before the closing, Phillip informed her that she would have to pay him another $1,500, in addition to the already promised $500, or he would not guarantee that the loan would close. Fearing that she would end up further behind in her debts, she agreed to this payment. On July 9, 2001, Miles closed on the loan for $232,896.65, with an APR of 10.281%, and asserts that, shortly after the closing, she paid Phillip the $2,000 he had demanded, in cash, in a parking lot.
Federal law requires that a financial institution give to a consumer a three-day opportunity following the closing of a loan and mortgage to rescind the transaction, and that it provide the mortgagor with written notice of this right. At the July 9 closing on her loan and mortgage, Miles received documents informing her of this three-day right to rescind. She alleges, however, that Beneficial’s employees pressured her to waive that right by having her sign these documents at the July 9 closing but post-dating her signature to July 13, so as to indicate that the three-day rescission period had already transpired.
Also at the closing, Miles’ loan was given a temporary number. On July 13, 2001, because Miles had not exercised the option to rescind, Beneficial assigned her a different permanent loan number, for which she was given no additional disclosure statements.
In addition to the above mortgage and loan, Beneficial transferred $8,000 to Miles sometime in the Spring or Summer of 2001, and claims that on May 15, 2001 Miles signed a Personal Credit Line Account Agreement for a revolving line of credit in that amount with an APR of 18%. Miles asserts, however, that she never entered into any such agreement, and that Beneficial made this transfer without her knowledge or consent, but that she only found out about it four months after she made her first payment on her mortgage, when an employee of Beneficial informed her of it.
Miles filed for bankruptcy in October 2003. Shortly thereafter, on November 17, 2003, she sent a notice of rescission of her mortgage to Beneficial. On December 8, 2003, Beneficia1 denied her request for rescission. Plaintiff then filed this complaint in Bankruptcy Court on December 3, 2004. Because the defendant would not agree to the plaintiffs demand for a jury trial, the Bankruptcy Court dismissed the complaint on procedural grounds with instruction to the plaintiff to refile it in this Court, which she did on July 8, 2005.

DISCUSSION

I. Summary Judgment Standard

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

II. Statute of Limitations for the Tort Claims

Although plaintiffs suit was not filed in this Court until July 8, 2005, the complaint had initially been filed in Bankruptcy Court on December 3, 2004. As the complaint in the Bankruptcy court was dismissed for procedural rather than substantive reasons, Decembers, 2004 is the operative date of filing for statute of limitations purposes. G.L.c. 260, §32; Carroll v. City of Worcester, 42 Mass.App.Ct. 628, 629 (1997); Liberace v. Conway, 31 Mass.App.Ct. 40, 42 (1991).
The alleged extortion of $2,000 by an employee of defendant occurred in July 2001. She was fully aware *163 of this action at the time she alleges that it took place, and as such any claims of tortious conduct in connection therewith is clearly barred by the three-year statute of limitations for torts. G.L.c. 260, §2A.
There is a dispute of fact, however, as to when plaintiff became aware of the alleged unauthorized $8,000 line of credit to her provided in 2001. At her deposition she denied knowing about it until four months after her first mortgage payment came due on August 13, 2001, i.e., around December 13, 2001. As her initial complaint was filed on December 3, 2004 in Bankruptcy Court, this was within three years of her discovery of the $8,000 loan (which allegedly occurred four months after August 13, 2001). The discovery rule “tolls the statute of limitations until a plaintiff discovers, or reasonably should have discovered, that she has been harmed or may have been harmed by the defendant’s conduct.” Phinney v. Morgan, 39 Mass.App.Ct. 202, 204 (1995). See Frank Cooke, Inc. v. Hurwitz, 10 Mass.App.Ct. 99, 110 (1980); Catrone v. Thoroughbred Racing Associations of North America, 929 F.2d 881, 885 (1 st Cir. 1991). The Court concludes that on the record before it, there is a dispute of fact as to whether she filed her complaint within three years of when she alleges she learned of her alleged injury from the $8,000 transfer, so that allegations of tortious conduct in regard thereto are not barred by the limitation statute.

III. Federal and State Lending Law Violations

In addition to state tort claims, Miles alleges that the closing agent’s actions violated Federal and state lending laws, specifically that the $2,000 she allegedly paid in cash directly to defendant’s employee can be considered an undisclosed finance charge under TILA, MCCDA, and the Massachusetts High Cost Mortgage Loans Regulations.[1] TILA was intended “to remedy unscrupulous and predatory creditor practices throughout the nation.” N.C. Freed Co., Inc. v. Board of Governors of Federal Reserve System, 473 F.2d 1210, 1214 (1st Cir. 1973), and courts have concluded that the terms of the statute must be “construed in liberal fashion if the underlying Congressional purpose is to be effectuated.” Id. A finance charge is “the sum of all charges, payable directly or indirectly by the persons to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit.” 15 U.S.C.A. §1605.[2] Regulations enacted pursuant to this statute include in this definition money paid to a third party other than the creditor, if the creditor “requires the use of a third parly as a condition of or an incident to the extension of credit, even if the consumer can choose the third party.” 12 C.F.R. §226.4. Miles claims that the defendant, acting through its closing agent, threatened that her loan would be delayed if she did not pay a third party (namely the loan officer himself) $2,000, i.e., that an agent of the defendant required Miles to make an additional payment in order to transact her loan. Such a payment would be a part of the finance charge of the plaintiffs loans under Federal and state law. If, as alleged, Miles did not have written notice of this fee as required, this transaction would constitute a violation of those statutes. See 12 C.F.R §226.17(a); 209 CMR §32.06. In Weil v. Long Island Sav. Bank, FSB, 77 F.Sup.2d 313, 321 (E.D.N.Y. 1999), the Court found that payments made by its customers that were used to “fund bribes, kickbacks, and unearned fees” could be considered finance charges under TILA.

TV. The Change to the Number of the Loan

Miles is incorrect in her contention that the numerical difference between the loan which she holds now and the one for which she signed the papers constitutes an automatic or per se violation of TILA which entitles her to summary judgment. She argues that, because of the discrepancies in the numbering, essentially two transactions took place: 1) the loan for which she signed, and 2) the loan that she ultimately received four days later. She then alleges that she received disclosures for the loan for which she signed, but she never received any disclosures for the loan which she actually received. She argues that Beneficial’s failure to make the necessary disclosures on the loan that she holds is a violation of TILA. While this change in the numbering of the loan is admitted by Beneficial and may indeed be a technical infringement of TILA, courts recognize that “de minimis violations in compliance with notice with no potential for actual harm” are not actionable. Rodrigues v. Members Mortgage Co., Inc., 323 F.Sup.2d 202, 207 (D.Mass. 2004) (citations omitted). Here, the change in the numbering of the loan did not cause the plaintiff any undisputed harm. Although plaintiff contends that the initial payment date, the final payment date, and the prepayment date were all mis-stated, the material terms of the two transactions were identical.[3] As there is at least a material dispute of fact as to whether any violation was more than de minimus, Miles is not entitled to summary judgment on her TILA claim.
Likewise, Miles’ contentions concerning the claimed coerced waiving of her right to rescind the allegedly improper $8,000 and $2,000 transfers do not entitle her to summary judgment, as there exists a dispute of material fact on those allegations. The defendants aver that the $8,000 was a properly transacted loan and deny that the $2,000 transfer ever took place.

V. Statute of Limitations of the TILA Claims

To pursue her claim under TILA, Miles must have met the statutory deadlines for two events - the notice of recission and the date of filing the lawsuit. For the reasons stated below, Miles was timely both in of these regards.[4]
Under TILA, when mandatory information is not delivered, the consumer has three years from the date of the closing to rescind the loan. 12 C.F.R. §226.15(a). *164 Here, Miles has alleged that Beneficial failed to disclose required information, thereby extending her time for recission to three years from the closing. She notified Beneficial that she was rescinding the loan on November 17, 2003, within three years of the closing date, July 9, 2001.
Miles was also timely in the filing of her lawsuit. Generally a consumer may file a suit under TILA within one year of receiving a financial institution’s refusal of a timely request to rescind, even if the filing date is more than three years beyond the closing of the loan. Miguel v. County Funding Corp., 309 F.3d 1161, 1165 (9th Cir. 2002). Here, the plaintiff notified the defendant that she was rescinding the loan on November 17, 2003, within three years of the closing date. The defendant responded on December 8, 2003 that it would not agree to rescind her loan. She then filed this complaint in Bankruptcy Court on December 3, 2004, less than one year after receiving the defendant’s denial of her request. Therefore, her claim is timely under TILA.

ORDER

For the foregoing reasons, it is ORDERED that Beneficial’s motion for summary judgment is DENIED, except as to plaintiffs tort allegations contained in Counts I, II, and V of the complaint with regard to the alleged extortion of $2,000 in July 2001, which are barred by the statute of limitations. Beneficial’s motion is ALLOWED as to the tort allegations of Counts I, II and V concerning the alleged $2,000 payment.
As Counts III (“unconscionability’j and IV (“tort”) fail to state an independent cause of action and are, in any event, redundant to allegations included in the other counts of the complaint, Counts III and IV are DISMISSED.[5]
For the reasons stated above, and because there are material disputes of fact in regard to virtually all of plaintiffs allegations except as noted above, Miles’ Motion for Summary Judgment is also DENIED.

These state statutes and regulations are “closely modeled” on the Federal Truth and Lending Act, and, as such, “Federal court decisions [on TILA] are instructive” in state courts’ interpretations of these provisions See Mayo v. Key Financial Services, Inc., 424 Mass. 862, 864 (1997).

This definition of finance charge also appears in G.L.c. 140D.

Both loans were for the same amount ($222,998.54) for the same interest rate (10.281% per year) and for the same duration (thirty years). The only apparent effect of the change from July 9 to July 13, 2001 was to provide plaintiff with an additional four days to make payments on the loan.

Miles’ claims under Massachusetts statutory and regulatory law are timely, as these provisions allow a consumer to file suit within four years of the closing of the loan. See G.L.c. 140D, §10(f) and G.L.c. 93A. Miles closed on her loan in July 2001 and filed her claim in December 2004.

As noted above, the complaint, for the most part, is exceedingly vague and non-specific in regard to both its factual and its legal allegations.